1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

10

11  JIM DALE DAVIS,                    ) Civil No. 10cv01891 CAB(RBB)
                                       )
12              Plaintiff,             ) **REPORT AND RECOMMENDATION**
                                       ) **GRANTING IN PART AND DENYING**
13  v.                                 ) **IN PART DEFENDANTS' MOTION TO**
                                       ) **DISMISS SECOND AMENDED**
14  R. POWELL, T. BOREM, L. SMALL,     ) **COMPLAINT [ECF NO. 30]**
    K. OURS,                           )
15                                     )
                Defendants.            )
16  _____   )

17      Plaintiff Jim Dale Davis, a state prisoner proceeding pro se

18  and in forma pauperis, filed a Complaint on August 31, 2010,

19  pursuant to 42 U.S.C. § 1983 [ECF No. 1].  The Defendants filed a

20  Motion to Dismiss Complaint, which was granted [ECF Nos. 17, 24-

21  25].  On September 30, 2011, Davis filed a First Amended Complaint

22  [ECF No. 26].  He subsequently sought leave to replace the second

23  page of the First Amended Complaint with a different page [ECF No.

24  27].  The Court granted his request and instructed the Clerk of the

25  Court to refile the First Amended Complaint with the replacement

26  page as a separate docket entry; this new filing would constitute,

27  and was docketed as, Davis's Second Amended Complaint, even though

28  it was titled "Frist [sic] Amended Complaint" [ECF No. 28].

Plaintiff's Second Amended Complaint was filed on October 6, 2011, along with exhibits [ECF No. 29].[1]  There, Davis argues in count one that Defendants violated the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") when they imposed a total ban on the purchase and receipt of prayer oil by inmates for fourteen months.  (Second Am. Compl. 1, 3-8, ECF No. 29.)  In count two, Plaintiff asserts that Defendants violated the Equal Protection Clause and retaliated against him when they implemented an addendum to Department Operations Manual ("DOM") supplement number 54030.7.1, which provided that certain religious items ordered by inmates would be counted as a quarterly package.  (Id. at 9-10; see id. Attach. #2 Ex. U, at 39.)  Warden Small signed the addendum on September 16, 2009.  (Id.)[2]  All Defendants allegedly discriminated against Davis because the religious items described in the addendum are purportedly used only by practitioners of the Muslim faith. (Second Am. Compl. 9-10, ECF No. 29.)  Plaintiff contends Defendants retaliated and discriminated again on October 25, 2010, when they implemented a policy that prayer oil orders from the vendor, Union Supply, would not count as a quarterly package, but orders from nonapproved vendors would.  (Id. at 10.)

---

[1]  Because the Second Amended Complaint and attachments are not consecutively paginated, the Court will cite to them using the page numbers assigned by the electronic case filing ("ECF") system. At times, Davis cites to the attachments using the page numbers designated in the exhibits.  In these instances, the Court will also use the ECF system pagination.

[2]  Although Davis has sued Defendant "L. Smalls," the Court construes this as a typographical error, as "L. Small" has appeared as one of the Defendants moving to dismiss.

1    On October 13, 2011, the four named Defendants, Powell, Borem,

2  Small, and Ours, filed a Motion to Dismiss Second Amended

3  Complaint, which included a Memorandum of Points and Authorities

4  [ECF No. 30].  Davis filed his "Objection to Defendants Motion to

5  Dismiss Second Amended Compliant [sic]" on October 31, 2011, which

6  the Court construes as an Opposition [ECF No. 31].  On November 7,

7  2011, Defendants' Reply was filed [ECF No. 33].

8    The Court has reviewed the Second Amended Complaint and

9  attachments, Defendants' Motion to Dismiss and attachment, Davis's

10  Opposition, and the Defendants' Reply.  The Motion to Dismiss is

11  suitable for resolution on the papers.  See S.D. Cal. Civ. R.

12  7.1(d)(1).  For the reasons stated below, the district court should

13  **GRANT** in part and **DENY** in part the Defendants' Motion.

## I.   FACTUAL ALLEGATIONS

15    Plaintiff is incarcerated at Calipatria State Prison.  (Second

16  Am. Compl. 1, ECF No. 29.)  In count one, Davis asserts that he has

17  been a practicing Muslim and has used prayer oil for sixteen years.

18  (Id. at 3.)  Plaintiff posits that using prayer oil is an

19  "obligatory act that [he] must do during the preformance [sic] of

20  his religion."  (Id. (citing id. Attach. #1 Ex. A, at 4).)  On

21  August 11, 2009, Defendant Powell and the Islamic chaplain issued a

22  religious chrono listing the religious articles Davis was

23  authorized to keep in his cell, which included eight ounces of

24  prayer oil per quarter.  (Id. at 3-4 (citing id. Attach. #1 Exs. B,

25  C).)  According to Plaintiff, the chaplain signed a religious item

26  approval list allowing Davis to purchase prayer oil from Halalco

27  Books, a vendor on Calipatria's authorized vendor list.  (Id. at 4

28  (citing id. Attach. #1 Ex. D).)  Davis alleges that on October 9,

1  2009, Halalco Books sent his eight-ounce prayer oil order to
2  Calipatria with the approval form on the box; Defendant Borem
3  received the order sometime in October, but failed to forward the
4  package to Plaintiff. (<u>Id.</u> at 4, 7 (citing <u>id.</u> Attach. #1 Ex. E,
5  at 21).)

6      Davis maintains that he waited several weeks for his prayer
7  oil before submitting an inmate grievance, to which prison
8  officials never responded. (<u>Id.</u> at 4.) On December 22, 2009,
9  Plaintiff submitted another grievance requesting that officials
10 deliver the prayer oil; the grievance was denied at the informal
11 level on January 5, 2010, because the "Hazmat Specialist,"
12 Defendant Ours, had "denied the introduction of oil into the
13 prison." (<u>Id.</u> (citing <u>id.</u> Attach. #1 Ex. F).) Plaintiff alleges
14 his subsequent appeals were denied at all levels; at the director's
15 level, it was determined that "[t]he oils were appropriately
16 confiscated as it was determined they pose a fire, health, and
17 safety hazard." (<u>Id.</u>; <u>see</u> <u>id.</u> Attach. #1 Ex. G, at 27.)

18     Defendant Ours allegedly never issued a memorandum explaining
19 why the oil was hazardous, and the decision was not supported by
20 any documentation or legitimate reason. (Second Am. Compl. 4-5,
21 ECF No. 29.) Davis maintains that on February 3, 2010, Defendant
22 Borem sent Plaintiff a letter indicating that his oil had been
23 returned to Halalco and that Defendants Ours, Small, and Powell had
24 concluded that prayer oil would no longer be allowed at Calipatria
25 because it posed a fire, health, and safety hazard. (<u>Id.</u> at 5
26 (citing <u>id.</u> Attach. #2 Ex. H).) In the letter, Borem explained
27 that the decision was based on the fire rating information on the
28

4

1  "Materials Safety Data Sheet" ("MSDS"), but he did not identify the
2  MSDS or where he obtained it.  (Id.)

3      Davis argues that from August 11, 2009, to October 16, 2010,
4  there was a "total ban" on the purchase and receipt of prayer oil
5  by inmates, denying him a "critical part" of his religion for
6  fourteen months.  (Id.)  Defendants' actions were allegedly without
7  any penological justification because if they followed protocol,
8  they would have known that the prayer oil from Halalco Books
9  complied with Calipatria's hazardous materials standards.  (Id.)

10     Davis contends that years earlier, on November 14, 2003,
11 Defendant Ours sent a memorandum to "department heads" regarding
12 the "Material Safety Sheet Binders," along with a copy of the
13 "Calipatria State Prison Hazardous Communication Plan."  (Id. at 6
14 (citing id. Attach. #2 Ex. I).)  The plan provided that a material
15 is "combustible" if its flash point is 100 degrees Fahrenheit and
16 above, and a material is "flammable" if its flash point is between
17 twenty and 100 degrees Fahrenheit.  (Id.)  Plaintiff asserts that
18 the prayer oil provided by Halalco Books has a flash point between
19 189 and 195 degrees Fahrenheit and therefore is not flammable.
20 (Id. (citing id. Attach. #2 Ex. J).)  In comparison, pink hand soap
21 has a flash point of 212 degrees, and pink skin cleanser has a
22 flash point of 200 degrees.  (Id. (citing id. Attach. #2 Exs. K,
23 L).)  Davis argues that Defendants therefore knew that the Halalco
24 prayer oil complied with Calipatria's hazardous materials
25 standards, but they still banned the oil.  (Id.)

26     The Plaintiff contends that on July 12, 2010, the associate
27 warden responded to inmate correspondence and wrote, "Warden McEwen
28 and Calipatria staff have reviewed the matter, and find that there

is no compelling reason to deny the oil from the vendors that have
been approved by the Institution in the past." (Id. Attach. #2 Ex.
M, at 22; see Second Am. Compl. 6-7, ECF No. 29.)  Davis further
asserts that during the total ban on prayer oil, he was never
supplied an alternative prayer oil vendor. (See Second Am. Compl.
7, ECF No. 29.)  Plaintiff states that while prison officials
ultimately provided the alternative vendor, Union Supply, this did
not occur until August 1, 2010. (Id. (citing id. Attach. #2 Ex.
O).)

On July 14, 2010, Davis received approval from the Islamic
chaplain to order prayer oil from Halalco Books. (Id. at 8 (citing
id. Attach. #2 Ex. R).)  Halalco shipped Plaintiff a back order
five days later, and on July 27, 2010, Halalco shipped his "current
order." (Id. (citing id. Attach. #2 Ex. S).)  Plaintiff insists
that the Defendants received the July 27, 2010 order, but did not
forward the oil to him until October 16, 2010. (Id.)  Defendant
Borem returned one of Plaintiff's prayer oil orders to Halalco as
recently as January 18, 2011, even though Borem knew Halalco was an
approved vendor. (Id. (citing id. Attach. #2 Ex. T).)  As a
result, Davis maintains that Defendants Powell, Borem, Small, and
Ours violated RLUIPA and the First Amendment by denying him access
to Islamic prayer oil without penological justification. (See id.
at 3-8.)

In count two, Davis alleges that Defendants conspired to force
him to purchase prayer oil from their preferred vendor, Union
Supply, instead of from Halalco Books, another approved Islamic
vendor. (Id. at 9.)  On September 16, 2009, Warden Small issued an
addendum to DOM supplement 54030. (Id.)  The addendum provided

6

1  that when an inmate received a package from a religious specialty

2  vendor, it would be counted as a regular quarterly personal

3  package.  (Id. Attach. #2 Ex. U, at 39.)  Davis argues that the

4  addendum discriminates against him and other Muslim prisoners

5  because it only lists Muslim religious articles.  (See Second Am.

6  Compl. 9, ECF No. 29.)  The addendum also violates section

7  3190(i)(4) of the California Code of Regulations ("CCR"), title 15,

8  and was issued in retaliation for Davis's assertion of his First

9  Amendment rights.  (Id.)  Thirteen days later, on September 29,

10 2009, Plaintiff and other Muslim inmates filed a group appeal

11 contesting the discriminatory addendum, but it was denied.  (Id.

12 (citing id. Attach. #2 Ex. V, at 41-45).)

13       The Plaintiff further argues that Defendants retaliated again

14 on October 25, 2010, when officials issued another addendum to DOM

15 supplement 54030, "stating that if Plaintiff ordered prayer oils

16 from Union Supply it would not be counted as a quarterly package

17 but if Plaintiff used a nondepartmentally approved vendor it would

18 be counted as a quarterly package."  (Id. at 10.)[3]  Davis complains

19 that the provisions penalize him because packages from Halalco, his

20 preferred Islamic vendor, are treated as quarterly packages, but

21 packages from Union Supply are not.  (See id.)  Therefore,

22 Defendants violated RLUIPA, the First Amendment, section 3190(i)(4)

23 of the California Code of Regulations, and the Equal Protection

24 Clause.  (Id.)

25

26

27
_____

28        [3]  Although Plaintiff cites to "Exhibit W," there are no
     exhibits beyond "Exhibit V" attached to the Second Amended
     Complaint or otherwise before the Court.

                                    7                          10cv01891 CAB(RBB)

## II.   APPLICABLE LEGAL STANDARDS

**A.   Motions to Dismiss for Failure to State a Claim**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999).  "The old formula -- that the complaint must not be dismissed unless it is beyond doubt without merit -- was discarded by the Bell Atlantic decision [Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007)]."  Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008).

A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp., 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); N.L. Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Bell Atl. Corp. v. Twombly, 550 U.S. at 563 n.8.  A

10cv01891 CAB(RBB)

dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir. 1993); see also Cholla Ready Mix, Inc., 382 F.3d at 973 (quoting Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994)) (stating that on a Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged[]"). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside of the pleadings. Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider, 151 F.3d at 1197 n.1. This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to

9

1   a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing

2   Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993)).

3   **B.   Standards Applicable to Pro Se Litigants**

4        Where a plaintiff appears in propria persona in a civil rights

5   case, the court must construe the pleadings liberally and afford

6   the plaintiff any benefit of the doubt.  Karim-Panahi v. Los

7   Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule

8   of liberal construction is "particularly important in civil rights

9   cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

10  In giving liberal interpretation to a pro se civil rights

11  complaint, courts may not "supply essential elements of claims that

12  were not initially pled."  Ivey v. Bd. of Regents of the Univ. of

13  Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory

14  allegations of official participation in civil rights violations

15  are not sufficient to withstand a motion to dismiss."  Id.; see

16  also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir.

17  1984) (finding conclusory allegations unsupported by facts

18  insufficient to state a claim under § 1983).  "The plaintiff must

19  allege with at least some degree of particularity overt acts which

20  defendants engaged in that support the plaintiff's claim."  Jones,

21  733 F.2d at 649 (internal quotation omitted).

22       Nevertheless, the Court must give a pro se litigant leave to

23  amend his complaint "unless it determines that the pleading could

24  not possibly be cured by the allegation of other facts."  Lopez v.

25  Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Doe v. United

26  States, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, before a pro se

27  civil rights complaint may be dismissed, the court must provide the

28  plaintiff with a statement of the complaint's deficiencies.  Karim-

Panahi, 839 F.2d at 623-24.  But where amendment of a pro se
litigant's complaint would be futile, denial of leave to amend is
appropriate.  See James v. Giles, 221 F.3d 1074, 1077 (9th Cir.
2000).

**C.   Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, the plaintiff must allege facts
sufficient to show (1) a person acting "under color of state law"
committed the conduct at issue, and (2) the conduct deprived the
plaintiff of some right, privilege, or immunity protected by the
Constitution or laws of the United States.  42 U.S.C.A. § 1983
(West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th
Cir. 1986).

### III.   DEFENDANTS' MOTION TO DISMISS

As to count one, Defendants Small, Powell, Borem, and Ours
argue that Davis fails to state a claim for relief under the First
Amendment because the temporary ban on prayer oil was reasonably
related to legitimate penological interests in not allowing
flammable materials into prison cells and controlling inmate
inventory.  (See Mot. Dismiss Attach. #1 Mem. P. & A. 5-7, ECF No.
30.)  The Defendants also maintain that Davis fails to state a
claim for relief under RLUIPA because regulating flammable prayer
oil furthers prison safety, which is a compelling governmental
interest and is the least restrictive means of achieving safety.
(Id. at 10-11.)

With regard to count two, the four Defendants argue that
Davis's claims against them fail because he was not precluded from
ordering prayer oil; rather, he was merely required to order prayer
oil as part of a quarterly package.  (Id. at 7-8.)  Limiting inmate

11

inventory to reduce contraband, theft, bartering, and gambling is a

legitimate penological interest. (Id. at 8.)  Plaintiff also does

not allege a RLUIPA allegation, Defendants assert, because

requiring Davis to order religious supplies as a quarterly package

did not place a substantial burden on his religious practice. (Id.

at 11-12.)  Plaintiff does not state an equal protection claim

because he fails to plead facts sufficient to show that the

provisions in the policy addendum were discriminatory. (Id. at 12-

14.)  Further, Defendants Powell, Borem, and Ours urge that the

First Amendment, Fourteenth Amendment, and RLUIPA causes of actions

fail because they are conclusory and lack factual support. (Id. at

14.)

Finally, the Defendants argue that they are entitled to

qualified immunity from liability on Davis's First and Fourteenth

Amendment claims. (Id. at 15-16.)

**A.   Violations of the California Code of Regulations**

In count two of the Second Amended Complaint, Davis alleges

that the Defendants' conduct violated "RLUIPA and the [First]

Amendment and Equal Treatment Clause." (Second Am. Compl. 9, ECF

No. 29.)  The gravamen of Plaintiff's allegations is that the

Defendants discriminated against him based on his religion. (See

id. at 9-10.)  Davis also states that Defendants' conduct violated

section 3190(i)(4) of the California Code of Regulations. (Id. at

10.)  Section 3190(i) provides that inmates shall be permitted

special purchases of authorized personal items from locally-

approved vendors, and staff must ensure that approved vendor

catalogs and order forms are available to qualifying inmates. Cal.

Code Regs. tit. 15, § 3190(i).  Special purchase items include

12

1   "[r]eligious [i]tems subject to approval by institutional chaplain

2   and designated custody staff."   Id. § 3190(i)(4).

3        Plaintiff cannot assert an independent cause of action based

4   on the purported violation of section 3190(i) of the California

5   Code of Regulations.   "The existence of regulations such as these

6   governing the conduct of prison employees does not necessarily

7   entitle Plaintiff to sue civilly to enforce the regulations or to

8   sue for damages based on the violation of the regulations."   K'Napp

9   v. Adams, No. 1:06-cv-01701-LJO-GSA (PC), 2009 U.S. Dist. LEXIS

10  38682, at *12 (E.D. Cal. May 7, 2009).   There is no implied private

11  right of action under title fifteen of the California Code of

12  Regulations.   Id. at *12-13.   Because Davis's asserted violation of

13  section 3190(i) fails to state a claim for relief in count two, the

14  Defendants' Motion to Dismiss this portion of count two should be

15  **GRANTED**.

16  **B.   Unauthorized Claims in Second Amended Complaint**

17       Under Federal Rule of Civil Procedure 15, a party may amend

18  its pleading within twenty-one days of service once as a matter of

19  course.   Fed. R. Civ. P. 15(a).   Thereafter, a party must obtain

20  leave of court or written consent from the opposing party.   Fed. R.

21  Civ. P. 15(a)(2).   Here, all of Davis's claims in his Complaint

22  were dismissed, and he was only given leave to amend his RLUIPA and

23  First Amendment causes of action.   (Report & Recommendation 38-39,

24  ECF No. 24; see Order 2, ECF No. 25.)   Plaintiff was not given

25  leave to add additional claims.   (Id.)   Nevertheless, in his Second

26  Amended Complaint, Davis improperly includes new allegations

27  against the Defendants for retaliation, conspiracy, and equal

28  protection.

"Although an amendment filed without leave of court, when leave is required, has no legal effect, the court has discretion to treat the amendment as properly filed if the court would have granted leave to amend had leave been sought." <u>Taylor v. City of San Bernardino</u>, No. EDCV 09-240-MMM (MAN), 2010 U.S. Dist. LEXIS 140060, at *19-20 (C.D. Cal. Oct. 12, 2010) (citing <u>Ritzer v. Gerovicap Pharm. Corp.</u>, 162 F.R.D. 642, 644-45 (D. Nev. 1995); <u>Brockmeier v. Solano Cnty. Sheriff's Dep't</u>, No. CIV S-05-2090 MCE EFB PS, 2007 U.S. Dist. LEXIS 40580, at *1 (E.D. Cal. May 21, 2007)).   Indeed, the Ninth Circuit has "repeatedly stressed that the court must remain guided by 'the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities.'" <u>Lopez</u>, 203 F.3d at 1127 (citation omitted).   Whether to give leave to amend rests in the sound discretion of the district court. <u>Pisciotta v. Teledyne Indus. Inc.</u>, 91 F.3d 1326, 1331 (9th Cir. 1996).

Courts typically consider five factors when determining whether to grant a motion for leave to amend:  (1) bad faith by the moving party, (2) undue delay in seeking leave to amend, (3) prejudice to the opposing party, (4) futility of an amendment, and (5) whether the plaintiff has previously amended the complaint. <u>Johnson v. Buckley</u>, 356 F.3d 1067, 1077 (9th Cir. 2004). "'Futility alone can justify the denial of a motion amend.'" <u>Id.</u> (quoting <u>Nunes v. Ashcroft</u>, 348 F.3d 815, 818 (9th Cir. 2003).   But "[p]rejudice to the opposing party is the most important factor." <u>Jackson v. Bank of Hawaii</u>, 902 F.2d 1385, 1387 (9th Cir. 1996) (citing <u>Zenith Radio Corp. v. Hazeltine Research</u>, Inc., 401 U.S. 321, 330-31 (1971)).   "Undue delay is delay that prejudices the

nonmoving party or imposes unwarranted burdens on the court." <u>BNSF</u>
<u>Ry. Co. v. San Joaquin Valley R.R. Co.</u>, No. 08-cv-01086-AWI (SMS),
2011 U.S. Dist. LEXIS 84694, at *5 (E.D. Cal. Aug. 2, 2011) (citing
<u>Mayreaux v. Louisiana Health Serv. and Indem. Co.</u>, 376 F.3d 420,
427 (5th Cir. 2004)).  Leave to amend "is not dependent on whether
the amendment will add causes of action or parties." <u>DCD Programs,</u>
<u>Ltd. v. Leighton</u>, 833 F.2d 183, 186 (9th Cir. 1987).

### 1. Retaliation

In count two, Davis alleges that the Defendants retaliated
against him for exercising his First Amendment rights. (Second Am.
Compl. 9, ECF No. 29.)  Specifically, they implemented a
discriminatory policy on September 16, 2009, that penalized inmates
who ordered Muslim-specific religious items by requiring that the
order count as a quarterly package. (<u>Id.</u>) Davis states that
Defendants retaliated again on October 25, 2010, when they
indicated that if Plaintiff ordered prayer oil from Union Supply,
it would not be counted as a quarterly package, but if he used a
nonapproved vendor, it would. (<u>Id.</u> at 10.) Defendants do not
address Davis's retaliation claims in their Motion to Dismiss or
Reply.  In his Opposition, Plaintiff asserts, "Defendants conceded
Plaintiff['s] retaliation argument on [page nine] of the SAC.
Plaintiff will not further argue retaliation in this objection to
Defendants['] (DMOD) because of Defendants['] concession." (Opp'n
9, ECF No. 31.)

Because Plaintiff was not given leave to add new causes of
action and has included new retaliation claims without leave of
court, he has not complied with Federal Rule of Civil Procedure
15(a).  As discussed previously, the Court has discretion to treat

1   the retaliation allegations as properly included if it would have

2   granted Davis leave to add these claims had leave been sought.  See

3   Taylor, 2010 U.S. Dist. LEXIS 140060, at *19.  The Court will look

4   to five factors to determine whether it would have given Plaintiff

5   leave to amend:  (1) bad faith, (2) undue delay, (3) prejudice to

6   the opposing party, (4) futility of amendment, and (5) previous

7   amendments.  Johnson, 356 F.3d at 1077.

8        Davis was given leave to amend his First Amendment and RLUIPA

9   claims.  (See Report & Recommendation 38-39, ECF No. 24; Order 1-2,

10  ECF No. 25.)  He ignored the Court's order and included additional

11  claims without authorization.  This is some evidence of bad faith.

12  See id.  Plaintiff presumably knew of Defendants' conduct when he

13  filed his Complaint on August 31, 2010, but failed to characterize

14  the conduct as retaliatory until he filed his Second Amended

15  Complaint more than one year later on October 13, 2011.  Davis's

16  delay and bad faith may suffice to deny a motion for leave to

17  amend.  BNSF Ry. Co., 2011 U.S. Dist. LEXIS 84694, at *5.

18  Nonetheless, Plaintiff's delay is not undue because it will not

19  prejudice the Defendants or impose an unwarranted burden on the

20  court.  See id.  Even if these considerations are ignored, an

21  amendment to include retaliation claims may be futile.

22       "A prison inmate retains those First Amendment rights that are

23  not inconsistent with his status as a prisoner or with the

24  legitimate penological objectives of the corrections system."  Pell

25  v. Procunier, 417 U.S. 817, 822 (1974).  The Constitution provides

26  protections from "deliberate retaliation" by government officials

27  for an individual's exercise of First Amendment rights.  See

28  Vignolo v. Miller, 120 F.3d 1075, 1077-78 (9th Cir. 1997);

16                                        10cv01891 CAB(RBB)

Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Because retaliation by prison officials may chill an inmate's exercise of legitimate First Amendment rights, retaliatory conduct is actionable even if it would not otherwise rise to the level of a constitutional violation.  See Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989).  Yet, retaliation claims are reviewed with particular care because they are prone to abuse by prisoners. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996); Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

A plaintiff suing prison officials pursuant to § 1983 for retaliation must allege sufficient facts that show that (1) "the retaliated-against conduct is protected," (2) the "defendant took adverse action against plaintiff," (3) there is a "causal connection between the adverse action and the protected conduct," (4) the act "would chill or silence a person of ordinary firmness," and (5) the conduct does not further a legitimate penological interest.  See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).  A plaintiff can allege retaliatory intent with a time line of events from which retaliation can be inferred.  See id. (citations omitted).  If the plaintiff's exercise of his constitutional rights was not chilled (factor four), he must allege that the defendant's actions caused him to suffer more than minimal harm.  Rhodes v. Robinson, 408 F.3d 559, 567-68 n.11 (9th Cir. 2005).  But see Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999).  The test is objective -- whether an official's acts would "'chill or silence a person of ordinary firmness from future First Amendment activities.  Mendocino Envtl. Ctr., 192 F.3d at 130 (citation omitted).

1                    **a.    The September 16, 2009 addendum**

2       Davis alleges that Defendants retaliated against him initially

3  by issuing an addendum to the Department Operations Manual (DOM) on

4  September 16, 2009, that implemented a discriminatory policy

5  requiring that only orders for Muslim religious items would be

6  counted as quarterly packages.  (Second Am. Compl. 9, ECF No. 29.)

7  The Plaintiff does not allege any facts showing that Defendants

8  Powell, Borem, and Ours were responsible for this policy, and an

9  amendment to include a retaliation claim against them would be

10 futile.  An amendment to include a retaliation claim against Warden

11 Small, however, is not clearly futile.  As to Defendant Small, the

12 elements of a retaliation claim have been pleaded.

13      First, Davis has asserted that Warden Small retaliated against

14 him for engaging in the constitutionally protected conduct of

15 obtaining items required to practice his religion.  (Second Am.

16 Compl. 9, ECF No. 29); see Watison, 668 F.3d at 1114 ("[T]he

17 plaintiff must allege that the retaliated-against conduct is

18 protected."); McElyea v. Babbit, 833 F.2d 196, 197 (9th Cir. 1987)

19 ("The right to exercise religious practices and beliefs does not

20 terminate at the prison door.").

21      Second, the facts pleaded are that Defendant Small took

22 adverse action against Davis and other Muslim inmates by

23 instituting a discriminatory policy making it more burdensome to

24 obtain items required to practice their religion or practice it as

25 easily as inmates of different faiths.  Watison, 668 F.3d at 1114.

26 The policy essentially forced Plaintiff to choose between ordering

27 Muslim religious items or other items, while other inmates could

28 order both.  (See Second Am. Compl. Ex. U, at 39, ECF No. 29.)

Third, Davis has asserted a causal link between the adverse action and the protected conduct. Emeldi v. Univ. of Oregon, 673 F.3d 1218, 1226 (9th Cir. 2012) (stating that at the pleading stage, a plaintiff need only assert that the protected activity and the adverse action are not completely unrelated). Plaintiff contends that the warden's retaliation was a substantial or motivating factor behind the quarterly package policy, as shown by the inherent discriminatory nature of the addendum. Id. at 1227 (noting that evidence of animus is relevant to proving causation); Brodheim, 584 F.3d at 1271 ("It is thus undisputed that the warning [the adverse action] was motivated by [the inmate's] protected conduct [disrespectful language in a prisoner's grievance]. . . .). The policy lists religious articles that Davis insists are specific to the Muslim faith, which, if true, supports the claim that Small acted to retaliate. See Coghlan, 413 F.3d at 1095 n.6. (stating that "animus to the class to which the plaintiff belongs" has been treated as direct evidence).

The alleged chronology of events further supports a retaliatory intent. See Emeldi, 673 F.3d at 1226. Small signed and issued the policy purportedly targeting Davis and other Muslim inmates on September 16, 2009; thirteen days later, on September 29, 2009, Plaintiff and other inmates filed a group appeal challenging the policy as discriminatory. (Second Am. Compl. 9, ECF No. 29; see id. Attach. #2 Ex. V, at 41-45.) On February 3, 2010, approximately five months later, all religious prayer oil at Calipatria was banned. (Second Am. Compl. 9, ECF No. 29; see id. Attach. #2 Ex. H, at 2.)

1    Fourth, Davis has pleaded facts indicating that Small's policy
2  would chill a person of ordinary firmness from practicing his
3  religion.  Watison, 668 F.3d at 1114.  A Muslim inmate would be
4  deterred from ordering Muslim articles to practice his religion
5  because his orders would count as quarterly packages; in contrast,
6  orders for religious items by inmates practicing other religions
7  would not count as quarterly packages.  See Brodheim, 584 F.3d at
8  1271.  Whether Davis was actually chilled in his attempts to obtain
9  prayer oil is inconsequential.  Medocino Envtl. Ctr., 192 F.3d at
10  1300 (concluding it would be unjust to allow a defendant to escape
11  liability because an unusually determined plaintiff persists in the
12  protected activity).

13    Finally, Davis alleges that the adverse action did not
14  reasonably further a legitimate penological interest.  (See Second
15  Am. Compl. 9-10, ECF No. 29); Watison, 668 F.3d at 1114.
16  Defendants argue that the addendum was adopted to investigate
17  whether prayer oil is flammable and to regulate inmate purchases
18  and property to prevent theft, bartering, and other conduct that
19  may be a threat to the institution, which are legitimate interests.
20  (See Mot. Dismiss Attach. #1 Mem. P. & A. 7, 11-12, ECF No. 30);
21  see Charles v. Verhagen, 220 F. Supp. 2d 937, 953 (W.D. Wis. 2002)
22  (finding that reducing administrative costs, streamlining searches,
23  and monitoring inmate property are legitimate interests).
24  Plaintiff's claim, however, is that the policy did not further any
25  interest because Small implemented it to retaliate against
26  Plaintiff for exercising his right to practice his religion by
27  ordering prayer oil.  See Rizzo v. Dawson, 778 F.2d 527, 532 (9th
28  Cir. 1985) (finding that plaintiff had adequately asserted that the

retaliatory acts were not a reasonable exercise of authority and
did not further any legitimate correctional goal).  Without
evidentiary support in the record, argument of defense counsel is
insufficient to establish that the September 16, 2009 addendum is a
regulation of the purchase of prayer oil that furthers a legitimate
penological interest.

     Although Davis generally asserts that all Defendants
retaliated, the alleged facts are that Warden Small set the policy.
Defendant Small did not move to dismiss Plaintiff's retaliation
claim.  Even though it does not appear that Davis has exhausted
this cause of action, it may not be too late for him to do so,
unless this policy was superceded by Small's October 25, 2010
addendum.  Based on these factors, an amendment to include a
retaliation claim against Warden Small for the allegedly
discriminatory addendum he approved on September 16, 2009, would
not clearly be futile.  <u>Johnson</u>, 356 F.3d at 1077.  The district
court therefore should treat this retaliation claim against
Defendant Small as properly asserted.  But the retaliation claim
against Powell, Borem, and Ours should not be treated as properly
included in the Second Amended Complaint because leave to add the
claim against these three Defendants should not be granted.

                    **b.   The October 25, 2010 addendum**

     Plaintiff contends that the Defendants retaliated again on
October 25, 2010, when they "issued another copy of the policy
addendum" indicating that if he ordered prayer oil from Defendants'
vendor, Union Supply, it would not count as a quarterly package;
however, an order from a nonapproved vendor would count as a
specialty package.  (Second Am. Compl. 10, ECF No. 29.

                                   21

Davis has not alleged that ordering religious items from his preferred vendor without it counting as a quarterly package is a constitutionally protected activity. <u>Watison</u>, 668 F.3d at 1114. Plaintiff can purchase prayer oil from an approved vendor without it counting as a quarterly package. Notably, there is no alleged meaningful religious difference between the prayer oil sold by Union Supply and nonapproved vendors. See <u>Kensu v. Cason</u>, No. 1:91-CV-300, 1996 U.S. Dist. LEXIS 5468, at *45-47 (W.D. Mich. Mar. 29, 1996) (approving a prison policy requiring that religious oil be ordered from the state-approved vendor because the plaintiff failed to show any religious difference between Muslim and Buddhist oil); <u>see also</u> <u>Jesus Christ Prison Ministry v. Cal. Dep't Corr.</u>, 456 F. Supp. 2d 1188, 1205 (E.D. Cal. 2006) (finding that a substantial burden was placed on plaintiff's religious exercise when unique worship materials were unavailable through any approved vendors).

Plaintiff, however, alleges that he is concerned that the prayer oil from Union Supply may be contaminated, but he can trust that the oil from his vendor is not. (Second Am. Compl. 10, ECF No. 29.) Nevertheless, a conclusory allegation of contamination is insufficient. See <u>Ashcroft v. Iqbal</u>, 556 U.S. at 683 (concluding that "complaint does not contain any factual allegation sufficient to plausibly suggest [officials'] discriminatory state of mind[]); <u>Kensu</u>, 1996 U.S. Dist. LEXIS 5468, at *45-47 (discussing failure to establish any meaningful religious differences between Muslim or Buddhist oil). Davis cannot allege that ordering prayer oil from his vendor of choice is a constitutionally protected activity. <u>See</u> <u>Thomas v. Little</u>, No. 07-1117-BRE/egb, 2009 U.S. Dist. LEXIS 57568,

1  at *15-18 (W.D. Tenn. July 6, 2009) (discussing approved-vendor

2  policy and determining that because the prayer oil that plaintiff

3  could buy from Union Supply was not alleged to be "unfit for his

4  religious ritual," the desire to order from his preferred vendor

5  was inconsequential under RLUIPA).

6       Because Davis has the option of obtaining religious items from

7  an approved vendor, the adverse action element is lacking.  In this

8  context, a policy that orders from unapproved vendors are counted

9  as quarterly packages does not burden Davis's religious exercise.

10 See id. at *17.  But cf. Brodheim, 584 F.3d at 1270.  ("Thus, the

11 mere threat of harm [transfer or disciplinary action] can be an

12 adverse action.")  The October 25, 2009 addendum is not analogous

13 to the adverse action in Brodheim.

14      Davis has not asserted facts establishing a causal connection

15 between protected conduct and the claimed adverse action -- here,

16 the October 25, 2010 addendum.  See Watison, 668 F.3d 1114.  The

17 only exhibit on which Plaintiff relies, "Exhibit W," is not

18 attached to the Second Amended Complaint or otherwise before the

19 Court.  (See Second Am. Compl. 10, ECF No. 29.)  The October 2010

20 policy does not indicate animus toward Muslim inmates because they

21 can order from Union Supply without penalty, the same as all other

22 inmates.  See Coghlan, 413 F.3d at 1095 n.6. (discussing animus

23 towards a class to which the plaintiff belongs as evidence of

24 discrimination against the plaintiff).

25      Plaintiff fails to allege the action would chill a person of

26 ordinary firmness from future conduct or that Davis suffered some

27 other harm.  Watison, 668 F.3d at 1114; Brodheim, 584 F.3d at 1269.

28 Davis could either order religious items from an approved vendor or

                                   23

1   from his preferred vendor and have it count as a quarterly package.

2   A reasonable inmate would not feel deterred from ordering prayer

3   oil under these circumstances.  See Brodheim, 584 F.3d at 2171.

4        Finally, Plaintiff fails to assert that the Defendants'

5   implementation of the October 25, 2010 policy did not further a

6   legitimate penological interest.  See Watison, 668 F.3d at 1114.

7        An amendment to include a retaliation claim based on the

8   October 25, 2010 addendum would be futile as to all Defendants.

9   Johnson, 356 F.3d at 1077.  Moreover, it is unclear whether Davis

10  has exhausted this retaliation cause of action.  The claim should

11  not be treated as properly asserted.

12       **2.  Conspiracy**

13       Similarly, Davis includes new claims for conspiracy in count

14  two without leave of court or the consent of the Defendants.  Fed.

15  R. Civ. P. 15(a)(2).  Davis alleges that all of the Defendants

16  conspired to violate his constitutional rights when they attempted

17  to force him to purchase prayer oil from their preferred vendor,

18  Union Supply.  (Second Am. Compl. 9, ECF No. 9.)  The conspiracy

19  allegations are not further explained or elaborated.  (See id.)  In

20  their Motion, Defendants Powell, Borem, and Ours argue that

21  Plaintiff only makes a conclusory assertion that they conspired to

22  violate his rights.  (Mot. Dismiss Attach. #1 Mem. P. & A. 14, ECF

23  No. 30.)  Defendant Small does not move to dismiss the conspiracy

24  claim.  (See id.)

25       Although Davis was not given leave to add new causes of

26  action, the Court will consider the claims if it would have granted

27  Plaintiff leave to amend if he properly sought leave.  See Taylor,

28  2010 U.S. Dist. LEXIS 140060, at *19.  The Court will consider bad

1  faith, undue delay, prejudice, futility of amendment, and prior
2  amendments.  Johnson, 356 F.3d at 1077.  As discussed above, Davis
3  exceeded the scope of the Court's order granting him leave to amend
4  his First Amended Complaint.  (See Report & Recommendation 34-38,
5  ECF No. 24; Order 1-2, ECF No. 25.)  This is evidence of bad faith.
6  Davis knew of the Defendants' actions when he filed his Complaint
7  on August 31, 2010, but he failed to allege a conspiracy until he
8  filed his Second Amended Complaint on October 13, 2011.  The delay
9  is not undue because it will not impose an unusual burden on the
10 Court or prejudice the Defendants.  See BNSF Ry. Co., 2011 U.S.
11 Dist. LEXIS 84694, at *5.  Because Defendants Powell, Borem, and
12 Ours move to dismiss the conspiracy claim, if their Motion should
13 be granted because Davis has failed to state a claim for relief,
14 the futility of amending dictates that the claim not be considered.
15      To state a conspiracy claim under § 1983, a plaintiff must
16 show (1) an agreement between the defendants to deprive the
17 plaintiff of a constitutional right, (2) an overt act in
18 furtherance of the conspiracy, and (3) a constitutional
19 deprivation.  Garcia v. Grimm, No. 1:06-cv-225-WQH (PCL), 2011 U.S.
20 Dist. LEXIS 20522, at *24 (S.D. Cal. Mar. 2, 2011); see also
21 Gilbrook v. City of Westminster, 177 F.3d 839, 856-57 (9th Cir.
22 1999).  "To be liable, each participant in the conspiracy need not
23 know the exact details of the plan, but each participant must at
24 least share the common objective of the conspiracy."  United
25 Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th
26 Cir. 1989).  Because conspiracies are secret agreements, "[a]
27 defendant's knowledge of and participation in a conspiracy may be
28

25                                    10cv01891 CAB(RBB)

1   inferred from circumstantial evidence and from evidence of the

2   defendant's actions." Gilbrook, 177 F.3d at 856-57.

3       To plead a claim of conspiracy under § 1983, plaintiff must

4   allege facts with sufficient particularity to show an agreement or

5   a meeting of the minds to violate the plaintiff's constitutional

6   rights. Miller v. California, 355 F.3d 1172, 1177 n.3 (9th Cir.

7   2004); Margolis v. Ryan, 140 F.3d at 853; Woodrum v. Woodward

8   County, 866 F.2d 1121, 1126 (9th Cir. 1989). "Vague and conclusory

9   allegations of official participation in civil rights violations

10  are not sufficient to withstand a motion to dismiss." Ivey, 673

11  F.2d at 268; see Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir.

12  1977).

13      Courts in the Ninth Circuit have required a plaintiff alleging

14  a conspiracy to violate civil rights to state specific facts to

15  support the existence of the claimed conspiracy. Olsen v. Idaho

16  State Bd. of Medicine, 363 F.3d 916, 929 (9th Cir. 2004)

17  (discussing conspiracy claim under § 1985); Harris v. Roderick, 126

18  F.3d 1189, 1195-96 (9th Cir. 1997) (applying heightened pleading

19  standard to Bivens conspiracy claims); Burns v. County of King, 883

20  F.2d 819, 821 (9th Cir. 1989) ("To state a claim for conspiracy to

21  violate one's constitutional rights under § 1983, the plaintiff

22  must state specific facts to support the existence of the claimed

23  conspiracy."); accord Bashkin v. Hickman, No. 07cv0995-LAB(CAB),

24  2008 U.S. Dist. LEXIS 4326, at *4 (S.D. Cal. Jan. 17, 2008).

25      First, Davis must allege an agreement between the Defendants

26  to deprive him of a constitutional right. Grimm, 2011 U.S. Dist.

27  LEXIS 20522, at *24. The agreement need not be overt and can be

28  inferred from the actions of the Defendants. Crowe v. Cnty. of San

1   Diego, 608 F.3d 406, 440 (9th Cir. 2010).   The Plaintiff's claim is

2   that all of the Defendants "conspired to force him to purchase

3   prayer oils" from their vendor.   (Second Am. Compl. 9, ECF No. 29.)

4   A conclusory statement that all the Defendants conspired to force

5   Davis to purchase oil from their vendor is insufficient.   See

6   Crowe, 608 F.3d at 440; Secress v. Ullman, 147 F. App'x 636, 638

7   (9th Cir. 2005).

8        Second, Davis must allege that the Defendants committed an

9   overt act in furtherance of the conspiracy.   Grimm, 2011 U.S. Dist.

10  LEXIS 20522, at *24.   There is no indication that the approved

11  vendor, Union Supply, did not sell authentic prayer oil.   Plaintiff

12  does not attribute any specific acts to the Defendants, other than

13  his blanket accusation that they "conspired to force" him to order

14  oil from their vendor.   (See Second Am. Compl. 9-10, ECF No. 29.)

15  To the extent Plaintiff claims they conspired to force him to use

16  their preferred vendor by issuing the October 25, 2010 addendum, an

17  overt act that caused injury is adequately alleged.   See Gibson v.

18  United States, 781 F.2d 1334, 1340 (9th Cir. 1986).

19       Finally, to state a claim for conspiracy, Plaintiff must show

20  that he was deprived of a constitutional right.   Garcia v. Grimm,

21  2011 U.S. Dist. LEXIS 20522, at *24.   Davis does not assert facts

22  sufficient to establish a constitutional right to order religious

23  items from his preferred vendor.   See generally Thomas v. Little,

24  2009 U.S. Dist. LEXIS 57568, at *15-18 (discussing approved-vendor

25  policy under First Amendment and RLUIPA).

26       Defendants Powell, Borem, and Ours have shown that their

27  Motion to Dismiss the improperly alleged conspiracy claims against

28  them should be **GRANTED**.   Similarly, a conspiracy claim against

Warden Small would be futile because Davis has not presented facts
illustrating that Defendant made an agreement with another to
deprive Davis of a constitutional right and acted in furtherance of
that agreement.  See Gilbrook, 177 F.3d at 856-57.  The conspiracy
cause of action alleged against Small is improperly included and
should be **DISMISSED**.

   **3.   Equal Protection**

   Likewise, Davis improperly includes a new equal protection
claim in his amended pleading without leave to do so.  (Report &
Recommendation 38-39, ECF No. 24; see Order 2, ECF No. 25.)  He
argues in count two that the September 16, 2009 addendum counting
Muslim religious items as quarterly packages is discriminatory.
(Second Am. Compl. 9, ECF No. 29.)  The policy only mentions
"prayer oil, [a] prayer rug, spiritual items, beads, etc.," which
Davis maintains are only Muslim religious articles.  (Id.)  Also,
Plaintiff urges that the October 25, 2010 addendum, stating that
religious item orders from Union Supply would not count as
quarterly packages is discriminatory.  (Id. at 9-10.)  Davis
complains that the October 2010 approved-vendor policy penalizes
him for ordering oil from his Muslim vendor, a reliable supplier of
noncontaminated religious items.  (Id. at 10.)

   As discussed in connection with Plaintiff's unauthorized
retaliation and conspiracy claims, the Court will consider whether
Davis would have been granted leave to amend if he properly sought
to add a new equal protection cause of action.  See Johnson, 356
F.3d at 1077 (listing factors relevant to granting leave to amend);
Taylor, 2010 U.S. Dist. LEXIS 140060, at *19.

The Court has already concluded that including a new claim in the Second Amended Complaint without authorization is evidence of bad faith, and adding an alternate theory of liability will not substantially prejudice the Defendants.  Still, an amendment to include the Fourteenth Amendment claims may be futile.

The Supreme Court has stated that "whenever the government treats any person unequally because of his or her [membership in a protected class], that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection." Adherent Constructors, Inc. v. Pena, 515 U.S. 200, 229-30 (1995); see also Damiano v. Florida Parole & Probation Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986) (explaining that protected classes include race, religion, national origin, and poverty).  "The Constitution's equal protection guarantee ensures that prison officials cannot discriminate against particular religions." Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), abrogated in part on other grounds by Shakur v. Schriro, 514 F.3d at 884-85 (9th Cir. 2008).  The Fourteenth Amendment is not violated by unintentional conduct that may have a disparate impact.  See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977); Washington v. Davis, 426 U.S. 229, 239 (1976).  "[A] plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

"Prisoners enjoy religious freedom and equal protection of the law subject to restrictions and limitations necessitated by legitimate penological interests." Freeman v. Arpaio, 125 F.3d at

737.   Prison officials "must afford a prisoner of a minority religion 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'"  Id. (quoting Cruz v. Beto, 405 U.S. 319, 322 (1972)); see Shakur, 514 F.3d at 891.  Prisons need not provide identical treatment to different faiths, but they must make a "'good faith accommodation of the [prisoners'] rights in light of practical considerations.'"  Id. (alteration in original) (quoting Allen v. Toombs, 827 F.2d 563, 569 (9th Cir. 1987)). Courts apply strict scrutiny "when distinctions are made on the basis of a suspect class, like religion."  Ass'n of Christian Schs. Int'l v. Stearns, 362 F. App'x 640, 646 (9th Cir. 2010).  If the policy is "facially neutral," disproportionate impact on a protected class can "satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy."  Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (citing Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. at 264-66).

In his Motion to Dismiss, Defendant Small argues that Davis does not plead that the discrimination is based on his membership in a protected class because he does not allege that other inmates had access to religious items that he did not.  (Mot. Dismiss Attach. #1 Mem. P. & A. 13, ECF No. 30.)  "The memorandum does not refer to the Muslim religion, nor does it exclude any other religions from its application."  (Id. at 13-14.)  In fact, Small contends, the addendum requires all religious orders to be counted as quarterly packages and has universal application.  (Id. at 13-

14.)  The addendum furthers the legitimate government interest in controlling prisoner property to limit contraband.  (<u>Id.</u> at 14.)

Davis counters by stating that chaplain approval is not required if he uses Union Supply for religious specialty orders, but it is required for nonapproved vendors.  (Opp'n 8, ECF No. 31.) Plaintiff argues that ninety-five percent of prisoners at Calipatria are not Muslim, and the addendum only mentions Muslim religious items.  (<u>Id.</u> at 8-9.)  Plaintiff asserts he is being singled out because of his religion, and although section 3190(i)(4) of the California Code of Regulations allows inmates to have special order purchases from locally approved vendors, Davis contends that this package is different from the personal property package based upon the inmate's privilege group status, referred to in section 3190(e).  (<u>Id.</u> at 7, 9 (citing Cal. Code. Regs. tit. 15, § 3190 (2012)).)

Defendant Small argues in his Reply that Davis appears to complain that he could not order from the vendor of his choice once the October 25, 2010 addendum was issued.  (<u>See</u> Reply 6, ECF No. 33.)  Small asserts that choosing between vendors does not amount to discrimination.  (<u>Id.</u>)  Also, the restriction serves a legitimate penological interest because approving vendors in advance reduces administrative costs, speeds up mail delivery to inmates, and reduces the possibility of contraband.  (<u>Id.</u>)

### a.   The September 16, 2009 addendum

To state an equal protection claim, Davis must allege that the Defendants acted with the intent to discriminate against him based on his membership in a protected class.  <u>Barren</u>, 152 F.3d at 1194. Because he asserts discrimination based on religion, which is a

protected class, the strict scrutiny standard is applied.  <u>Ass'n of</u>
<u>Christian Schs. Int'l</u>, 362 F. App'x at 646.  If the policy is
facially neutral, Plaintiff must allege facts demonstrating that
Small acted with a discriminatory purpose when enacting the policy,
resulting in a disproportionate impact.  <u>See Lee</u>, 250 F.3d at 686.

The September 2009 policy provides, in relevant part:

> The following course of action will be implemented
> in Receiving and Release in regards to religious
> packages:
>
> . . . .
>
> 2.   Special orders for the following items: prayer oil,
>      [a] prayer rug, spiritual items, beads, etc., will
>      be considered a quarterly package.  The arrival date
>      of the special order shall be the basis for the
>      eligibility determination.

(Second Am. Compl. Attach. #2 Ex. U, at 39, ECF No. 29.)  Warden
Small signed the addendum.  (<u>Id.</u>)

Although Davis's claim is that the policy targets only Muslim
religious purchases, the addendum does not list any religion and is
facially neutral.  <u>Lee</u>, 250 F.3d at 686.  Plaintiff has asserted a
discriminatory impact on the protected class of Muslim
practitioners because he and other Muslim inmates must count their
orders as quarterly packages and choose between religious articles
and other items.  (Second Am. Compl. 9-10, ECF No. 29.)

"'Discriminatory purpose' . . . implies more than intent as
volition or intent as awareness of consequences.  It implies that
the decisionmaker . . . selected or reaffirmed a particular course
of action at least in part 'because of,' not merely 'in spite of,'
its adverse effects upon an identifiable group."  <u>Navarro v. Bock</u>,
72 F.3d at 716 n.5 (quoting <u>Personnel Adm'r of Mass. v. Feeney</u>, 442
U.S. 256, 279 (1979)).  Some of the "other evidence" that can

32

establish discriminatory intent includes the "historical background

of the decision . . . particularly if it demonstrates there has

been a series of official actions taken for invidious

purposes . . . ."  Id. at 716 (citation omitted) (internal

quotation marks omitted).  The mere fact that a facially neutral

policy has a "foreseeably disproportionate impact" on a protected

group, without more, does not rise to the level of an equal

protection violation.  Lee, 250 F.3d at 687.

Taken as a whole, Davis has alleged that the policy was

implemented by Warden Small, at least in part, "because of" its

adverse effects on Plaintiff and other Muslim inmates, as the

articles listed are items ordered by only Muslim prisoners.  See

Navarro, 72 F.3d at 716.  Davis submits that only five percent of

Calipatria inmates are Muslim, so limiting the policy to Muslim-

specific items demonstrates inherent animus toward him and other

Muslims.  (See Second Am. Compl. 9-10, ECF No. 29; Opp'n 8-9, ECF

No. 31.); see also Freeman, 125 F.3d at 737-38 ("Such conduct . . .

was not directed at inmates of other faiths.  We find this

sufficient to raise a genuine issue as to whether Muslim inmates'

access to Islamic services is reasonable in comparison to the

access of other inmates to their religious services.").

The strict scrutiny standard applies to Davis's claim "because

religion is a suspect class."  See Ass'n of Christian Schs. Int'l,

362 F. App'x at 646 (rejecting an equal protection challenge to

University of California course approval policy that was not based

on a suspect classification); see, e.g., Johnson v. California, 543

U.S. 499, 505 (2005) (stating that racial classifications must be

narrowly tailored to further compelling governmental interests).

Plaintiff's claim is that the discriminatory addendum was issued
for the sole purpose of discriminating against Davis and other
Muslims. (See Second Am. Compl. 9, ECF No. 29.)  Without
substantiation, Defendants assert that the policy was implemented
for the administrative convenience of saving costs, streamlining
searches, and controlling inmate property. (See Mot. Dismiss
Attach. #1 Mem. P. & A. 6, ECF No. 30.)  But see Frontiero v.
Richardson, 411 U.S. 677, 690-91 (1973) ("'[A]dministrative
convenience' is not a shibboleth, the mere recitation of which
dictates constitutionality."); see also Johnson, 543 U.S. at 507-08
(finding the policy to house inmates of the same race together to
avoid racially motivated violence was not narrowly tailored to a
compelling interest in prison safety, even though race riots had
occurred).  Moreover, the asserted goals are  undermined by the
fact that the September 16, 2009 policy is alleged to restrict only
Muslim purchases to quarterly packages, but it does not impose
similar restrictions on articles purchased by worshipers ofother
religions.

At this pleading stage, Davis has alleged facts sufficient to
establish that the policy adopted by Small was enacted with
discriminatory intent and fails the strict scrutiny standard.
Warden Small's Motion to Dismiss the equal protection claim
premised on the September 16, 2009 addendum should be **DENIED**.
Although Defendants Powell, Borem, and Ours did not join in Small's
Motion, Davis does not present any facts indicating that they were
involved in the imposition of this policy.  Without more, an
amendment to include an equal protection claim against Defendants
Powell, Borem, and Ours regarding the September 16, 2009 addendum

would be futile, and the claim against them should not be treated
as properly asserted.

### b.   October 25, 2010 addendum

Davis also challenges the policy stating that orders from
approved vendors would not count as a quarterly package, but orders
from nonapproved vendors would.  (See Second Am. Compl. 10, ECF No.
29.)   Still, its provisions are facially neutral, and Davis does
not contend otherwise.  See Lee, 250 F.3d at 686.  Plaintiff
appears to claim is that the facially neutral policy had a
discriminatory impact, yet there are no allegations showing that
this addendum restricted Davis and other Muslim inmates more than
it restricted prisoners of other faiths.

Plaintiff has not pleaded that Defendants acted with
discriminatory intent.  Barren, 152 F.3d at 1194.  Unlike the
September 2009 policy essentially requiring Davis and other Muslim
inmates to choose between religious items and other purchases, the
October 2010 addendum does not preclude the purchase of Muslim
items, as long as inmates order from vendors approved by the
prison.  See Lee, 250 F.3d at 686.  Davis can also order religious
items from his preferred, nonapproved vendor with chaplain
approval, and the order will count as a quarterly package.  (See
Opp'n 8, ECF No. 31.)

Thus, an amendment to include an equal protection claim
against all four Defendants would be futile.  Johnson, 356 F.3d at
1007.  The district court should treat the equal cause of action in
count two based on the October 25, 2010 policy as improperly
alleged.

C.   **Conclusory Allegations Against Defendants Powell, Borem, and
     Ours in Count Two**

In count two, Davis asserts claims for conspiracy,
retaliation, and discrimination against these three Defendants.
(Second Am. Compl. 9-10, ECF No. 29.)  He concludes by arguing that
they also violated the First Amendment and RLUIPA.  (Id. at 10.)
Defendants Powell, Borem, and Ours maintain that these claims fail
because there are no specific allegations against them, and the
charges are conclusory and formulaic.  (Mot. Dismiss Attach. #1
Mem. P. & A. 14, ECF No. 30.)

To be liable under § 1983, a person acting under color of
state law must cause the plaintiff to suffer the violation of a
constitutional right.  42 U.S.C.A. § 1983.  "A person 'subjects'
another to the deprivation of a constitutional right . . . if he
does an affirmative act, participates in another's affirmative
acts, or omits to perform an act which he is legally required to do
that causes the deprivation of which complaint is made." Johnson
v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citing Sims v. Adams,
537 F.2d 829 (5th Cir. 1976)).  Thus, the plaintiff must allege
that each defendant committed some act, or failed to act in a
particular way, that was the cause of the constitutional injury.
Williams v. Bennett, 689 F.2d 1370, 1385 (11th Cir. 1982).  A
plaintiff must link each defendant to the alleged § 1983 violation,
and the factual allegations must be sufficient to give the
defendants fair notice of the claim against them.  Whiting v. Cnty.
of Riverside, No. 11-1603-CAS(CW), 2012 U.S. Dist. LEXIS 30613, at
*17 (C.D. Cal. Mar. 6, 2012) (citing Ortez v. Washington Cnty., 88
F.3d 804, 809-10 (9th Cir. 1996)).

Plaintiff does not make any specific allegations against Powell, Borem, or Ours in count two, other than a general assertion that they "conspired to force Plaintiff to purchase prayer oils from the[ir] vendor," and they retaliated and discriminated against him. (Second Am. Compl. 9, ECF No. 29.) As discussed above, Davis fails to state a conspiracy claim against these three Defendants, and their Motion to Dismiss should be granted. The retaliation and equal protection claims against Powell, Borem, and Ours were improperly included. Plaintiff does not attribute any other unconstitutional behavior to these Defendants . (See id. at 9-10.) Therefore, Defendants Borem, Ours, and Powell's Motion to Dismiss the First Amendment and RLUIPA claims against them in count two of the Second Amended Complaint should be **GRANTED**. Because Davis could not plead any additional facts to cure the deficiencies in his pleadings and has already been given leave to amend, he should not be given further leave to amend his claims against Defendants Powell, Borem, and Ours in count two. Lopez, 203 F.3d at 1127.

**D.   First Amendment**

The Free Exercise Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, "forbids all laws 'prohibiting the free exercise' of religion." McDaniel v. Paty, 435 U.S. 618, 620 (1978) (citing U.S. Const. amend. I). The clause protects a person's right to hold a particular religious belief and the right to engage in conduct motivated by that belief. Emp't Div. v. Smith, 494 U.S. 872, 877 (1990). "[T]he 'exercise of religion' often involves not only belief and profession [of belief] but the performance of (or abstention from) physical acts . . . ."). Id.

37

"The right to exercise religious practices and beliefs does not terminate at the prison door." McElyea, 833 F.2d at 197 (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Bell v. Wolfish, 441 U.S. 520, 545 (1979)).  To be entitled to protection under the Free Exercise Clause of the First Amendment, the claim must involve a sincerely held religious belief.  Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (citations omitted).  In order to establish a free exercise violation, a prisoner must show that the defendants burdened the practice of his sincerely-held religious beliefs.  Shakur v. Schriro, 514 F.3d at 884-85.

A prisoner's First Amendment right to freely exercise his religious beliefs, however, is "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." McElyea, 833 F.2d at 197 (citing O'Lone, 482 U.S. at 342).  The competing interests are balanced by determining whether the restriction is "reasonably related to legitimate penological interests." O'Lone, 482 U.S. at 353; see also Anderson v. Angelone, 123 F.3d 1197, 1198 (9th Cir. 1997).  The regulation cannot be an "exaggerated response to prison concerns." Turner v. Safley, 482 U.S. 78, 80 (1987).

In Turner, the Court announced the standard for determining the reasonableness of a prison regulation that infringes on prisoners' constitutional rights.  More recently, the Court clarified the Turner standard:

> [F]our factors are relevant in deciding whether a prison regulation affecting a constitutional right . . . withstands constitutional challenge:  [1] whether the regulation has a "'valid, rational connection'" to a legitimate governmental interest; [2] whether

> alternative means are open to inmates to exercise the asserted right; [3] what impact an accommodation of the right would have on guards and inmates and prison resources; and [4] whether there are "ready alternatives" to the regulation.

Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (citing Turner, 482 U.S. at 89-91).  "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."  Id.

Legitimate penological interests include "security, order, and rehabilitation."  Procunier v. Martinez, 416 U.S. 396, 413 (1974); see also Florence v. Bd. of Chosen Freeholders, 566 U.S. __, __, 132 S. Ct. 1510, 1527 (2012) (Breyer, J., dissenting) (noting that strip searches are reasonably related to finding injuries, preventing spread of disease, minimizing gang violence, and detecting contraband, which are legitimate penological interests); Bell v. Wolfish, 441 U.S. at 546-47 (finding that the protection of inmates and staff is a legitimate penological interest).  "Maintaining safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions for the problems they face."  Florence, 566 U.S. at __, 132 S. Ct. at 1515; see also Shaw v. Murphy, 532 U.S. 223, 229 (2001) (holding that courts generally defer to prison official's judgment because problems in prisons are complex and courts are not equipped to manage prisons).  Although Turner dealt with the reasonableness of prison regulations, the same analysis has been applied to individual acts preventing a prisoner from engaging in a religious practice.  See Ford v. McGinnis, 352 F.3d 582, 594-95 (2d Cir.

1  2003).   The <u>Turner</u> standard applies to Davis's Second Amended

2  Complaint.

3     **1.   Count one: temporary total ban on Islamic prayer oil**

4       In their Motion to Dismiss, Small, Powell, Borem, and Ours

5  contend that prayer oil was temporarily banned while officials

6  investigated whether it was flammable and attempted to control

7  prisoner inventory.  (Mot. Dismiss Attach. #1 Mem. P. & A. 5, ECF

8  No. 30.)  Plaintiff counters that although Defendants based their

9  decision on the material safety data sheets ("MSDS"), the MSDS

10 provided by Halalco Books would have shown that the prayer oil was

11 not flammable.  (Opp'n 2, ECF No. 31.)  In their Reply, Defendants

12 assert that Davis includes a memorandum written by Defendant Ours

13 more than six years before the confiscation of Davis's prayer oil.

14 (Reply 3, ECF No. 33 (citing Second Am. Compl Attach. #2 Ex. I,

15 ECF No. 29).)  Also, the material safety data sheet from Halalco

16 that Plaintiff attaches is undated.  (<u>Id.</u> (citing Second Am.

17 Compl. Attach. #2 Ex. J, ECF No. 29).)  Defendants further argue

18 that Plaintiff did not plead that Ours reviewed or relied on the

19 Halalco document when making the decision to ban the prayer oil

20 from Calipatria.  (<u>Id.</u>)

21      In the Second Amended Complaint, Davis maintains that the

22 Defendants violated his First Amendment rights when they banned

23 prayer oil from Calipatria without any penological justification.

24 (<u>See</u> Second Am. Compl. 3-8, ECF No. 29.)  Plaintiff asserts that

25 in the Islamic religion, the use of prayer oil is obligatory.

26 (<u>Id.</u> at 3 (citing <u>id.</u> Attach. #1 Ex. A).)  On August 11, 2009,

27 Defendant Powell authorized Davis to purchase eight ounces of

28 prayer oil per quarter; Plaintiff began purchasing prayer oil from

1   Halalco Books, a Calipatria-approved vendor. (<u>Id.</u> at 4.)  On

2   October 9, 2009, Halalco sent Davis's prayer oil order to him at

3   Calipatria, but he never received it. (<u>Id.</u>)  Plaintiff argues

4   that Defendant Ours's decision to ban prayer oil was not supported

5   by evidence, and Ours never provided an explanation for

6   implementing the ban. (<u>Id.</u> at 4-5.)

7        Then on February 3, 2010, Defendant Borem sent Plaintiff a

8   letter stating that his prayer oil had been returned to Halalco

9   and that Defendants Ours, Small, and Powell had concluded that

10  prayer oil would no longer be allowed at Calipatria because it

11  posed a fire, health, and safety threat. (<u>Id.</u> at 5.)  Borem did

12  not indicate which data sheet was used to determine flammability.

13  (<u>Id.</u>)  According to Plaintiff, there was a "total ban" of prayer

14  oil from August 11, 2009, to October 16, 2010. (<u>Id.</u>)  Defendant

15  Ours, on November 14, 2003, had sent a memorandum to department

16  heads containing an explanation of how to determine whether a

17  material is flammable. (<u>Id.</u> at 6.)  Davis asserts that based on

18  this explanation, Defendants Ours, Small, and Powell knew the

19  Halalco prayer oil was within the hazardous materials guidelines

20  for Calipatria. (<u>Id.</u>)

21       Also, Associate Warden Anderson's July 12, 2010 letter stated

22  that the new Calipatria warden and staff found there was no

23  compelling reason to ban prayer oil. (<u>Id.</u> at 6-7.)  Davis was not

24  given an alternative prayer oil vendor until August 1, 2010, when

25  Defendants provided the Union Supply catalog. (<u>Id.</u> at 7.)

26  Defendant Borem allegedly knew that Davis's October 9, 2009 order

27  from Halalco Books contained religious items, but Borem still

28  returned the prayer oil to Halalco on February 3, 2010. (<u>Id.</u> at

41

7-8.)  Plaintiff argues that he again received authorization to
order prayer oil, but Borem failed to deliver Davis's July 17 and
18, 2010 prayer oil orders until October 16, 2010.  (<u>Id.</u>)  Borem
continued to return prayer oil to Halalco on the ground that it
was not an approved vendor, even though it had been approved as
early as July 12, 2010.  (<u>Id.</u>)  As a result, Plaintiff complains,
the Defendants violated his First Amendment rights.  (<u>Id.</u>)

>           **a.   Rationally related to a legitimate interest**

Defendants contend that the first <u>Turner</u> factor weighs in
their favor because there is a rational connection between the
temporary ban and the penological interest of preventing inmate
possession of flammable material.  (Mot. Dismiss Attach. #1 Mem.
P. & A. 5-6, ECF No. 30.)  Defendants claim the exhibits attached
to the Second Amended Complaint show the prayer oil was, in fact,
flammable.  (<u>Id.</u> at 6 (citing Second Am. Compl. Attach. #2 Ex. H,
ECF No. 29).)  Even if the oil was not flammable, prison officials
were entitled to determine whether it was because they have an
interest in regulating prisoner purchases and property.  (<u>Id.</u>)
Controlling prisoner property reduces administrative costs and
streamlines the process of searching cells as well as monitoring
inmate property.  (<u>Id.</u>)

Davis argues that Defendants' actions were speculative and
based on an exaggerated claim that the oil was flammable;
Defendants therefore had no legitimate penological justification
to ban the oil while they determined whether it was flammable.
(Opp'n 2-3, ECF No. 31.)  Davis insists that the MSDS and shipping
MSDS information from Halalco Books showed the prayer oil was not
flammable.  (<u>See</u> <u>id.</u> at 6 (citing Second Am. Compl. Exs. I, J).)

Plaintiff points out that <u>Lewis v. Ollison</u>, 571 F. Supp. 2d 1162 (C.D. Cal. 2008), one case cited by Defendants, only deals with limiting the quantity of prayer oil, not a total ban.  Davis identifies one court that found a total ban of prayer oil unconstitutional.  (Opp'n 2-3 (citing <u>Munir v. Scott</u>, 792 F. Supp. 1472, 1482-83 (E.D. Mich. 1992), <u>rev'd</u>, <u>Munir v. Scott</u>, 12 F.3d 213 (6th Cir. 1993)).)  Plaintiff also distinguishes another case cited by Defendants, <u>Davis v. Flores</u>, No. 1:08-cv-1177, 2011 U.S. Dist. LEXIS 4417 (E.D. Cal. Jan. 14, 2011), <u>aff'd in part and vacated in part</u>, No. 11-15296, 2012 U.S. App. LEXIS 10673 (9th Cir. May 25, 2012).  (Opp'n at 6, ECF No. 31.)  In <u>Davis v. Flores</u>, the prisoners retained access to prayer oil in the chapel, and the total ban only applied to the Muslim imam bringing prayer oil into the prison.  (<u>Id.</u>)

The first <u>Turner</u> factor looks to whether the prison regulation is rationally related to a legitimate penological interest.  <u>Beard v. Banks</u>, 548 U.S. 521, 529 (2006) (justifications for prison policy set forth in summary judgment motion).  The Defendants assert the following three legitimate governmental interests for banning prayer oil:  (1) preventing fire hazards in cells, (2) regulating prisoner purchases and property to prevent theft, bartering, gambling, or hiding contraband, and (3) reducing administrative costs, streamlining cell searches, and monitoring inmate property.  (Mot. Dismiss Attach. #1 Mem. P. & A. 6, ECF No. 30.)  All three reasons can be legitimate penological interests.  <u>See</u> <u>Ward v. Walsh</u>, 1 F.3d 873, 879 (9th Cir. 1993) (following a bench trial, appellate court upheld restriction of prayer candles in cells because of fire

hazard); <u>Davis v. Flores</u>, 2011 U.S. Dist. LEXIS 4417, at *31-33,
40 (granting summary judgment and upholding temporary ban on
inmates' possession of prayer oil in cells due to imam smuggling
contraband into the prison using prayer oil bottles); <u>Lewis v.
Ollison</u>, 571 F. Supp. 2d at 1172 (considering attachment to
complaint and stating that regulating prayer oil purchases is
related to a legitimate interest in preventing certain conduct,
such as theft, bartering, gambling, hiding contraband); <u>Verhagen</u>,
220 F. Supp. 2d at 953 (granting summary judgment and finding that
reducing costs, streamlining searches, and monitoring inmate
property are legitimate interests).

The prison regulation must be rationally related to the
legitimate interest. <u>Beard</u>, 548 U.S. at 529. A ban on flammable
prayer oil because of fire concerns can be rationally related to
prison safety concerns. <u>See</u> <u>Glass v. Scribner</u>, No. 1:05-cv-0457-
LJO(DLB), 2008 U.S. Dist. LEXIS 20518, at *17-23 (E.D. Cal. Mar.
17, 2008) (granting summary judgment and finding that a temporary
ban on prayer oil after inmates left burning prayer oil unattended
in cells was rationally related to the legitimate interest in
prison safety). But a ban on nonflammable prayer oil does not
further prison safety and is an exaggerated response to
speculative concerns. <u>See</u> <u>Turner</u>, 482 U.S. at 89.

Davis has alleged facts sufficient to establish that the
prayer oil was not flammable, and the ban was not based on
legitimate flammability concerns. (Second Am. Compl. 5-6, ECF No.
29.) He contends that the total ban had no rational connection to
prison safety because the oil is nonflammable. <u>See</u> <u>O'Lone</u>, 482
U.S. at 350-51 (1987) (discussing rational connection between

44

prison security and prison policy).  But cf. Hammons v. Saffle,
348 F.3d 1250, 1254-55 (10th Cir. 2003) (affirming summary
judgment that found logical connection between prison regulation
that banned inmates' in-cell prayer oil possession and preventing
illegal drug use because inmates could still purchase and possess
prayer oil in designated, supervised areas).

### b.   Alternative means

Defendants assert that the second Turner factor also weighs
in their favor because Davis had alternative methods of practicing
his religion. (Mot. Dismiss Attach. #1 Mem. P. & A. 6, ECF No.
30.)  He was authorized to receive the Holy Qur'an, Miswak (tooth
sticks), a religious medallion, a prayer rug, prayer caps, a Kudra
shirt, prayer beads, and a Hadith. (Id.)  Davis could pray in his
cell and use these items. (Id.)  The Plaintiff counters that he
did not have any alternative because prayer oil use is required by
his religion. (Opp'n 3-4, ECF No. 31.)  Davis maintains that
"prison officials must give inmates a reasonable opportunity to
exercise their religious belief without fear of penalty." (Id. at
4.)  In their Reply, Defendants posit that the second Turner
factor does not consider whether Davis had "alternative prayer
oils," but whether he had alternatives means of practicing his
religion. (Reply 4, ECF No. 33.)

The second Turner factor is whether the prisoner had
alternative means to exercise his religious right. Beard, 548
U.S. at 529.  Davis pleads that he did not have a reasonable
alternative to practice his religion because the use of prayer oil
is a "central" part of his religious practice; he adds that he had
no other means of acquiring prayer oil. (Opp'n 4, ECF No. 31.)

But see Hammons, 348 F.3d at 1256 (finding the plaintiff's lack of in-cell access to prayer oil did not "eradicate the value of his prayers" because he had the alternative of accessing and using his prayer oil through volunteer chaplains); O'Lone, 482 U.S. at 352-53 (discussing that while prisoners on work detail are unable to attend Jumu'ah services, they can still participate in other Muslim ceremonies and practices). Davis did not have access to prayer oil anywhere within the prison, and due to the total ban, he contends that he could not conduct a practice central to his religious beliefs. "Alternatives . . . need not be ideal, however; they need only be available. Here, the alternatives are of sufficient utility that they give some support to the regulations, particularly in a context where visitation is limited, not completely withdrawn." Overton, 539 U.S. at 135 (determining that a policy limiting who may visit a prisoner passes the Turner test because the inmate may still write or call persons not allowed to visit); see O'Lone, 482 U.S. at 352-53. Plaintiff has alleged he was not provided an alternative to a central tenant of his religion for approximately fourteen months; the second Turner factor weighs in Davis's favor.

        **c.   Impact of accommodation**

Defendants contend that accommodating Plaintiff's request for prayer oil would "impact guards, other inmates, and the allocation of prison resources generally." (Mot. Dismiss Attach. #1 Mem. P. & A. 7, ECF No. 30.) They also argue that even though the prayer oil was ultimately found not to be flammable, prison officials had an interest in verifying the flammability of the oil, reducing administrative costs, and streamlining the search of prisoners

1    cells and property.  (Id. at 6-7.)  Davis argues the Defendants

2    relied on the false assumption that the prayer oil was flammable.

3    (Opp'n 5, ECF No. 31.)

4         Under the third factor in Turner, courts look to the impact

5    that an accommodation would have on the guards, other prisoners,

6    and prison resources.  Beard, 548 U.S. at 529.  Indeed, allowing

7    inmates to use and possess flammable prayer oil raises safety

8    concerns and would financially impact the prison because each

9    inmate's prayer oil use would have to be monitored.  See Glass,

10   2008 U.S. Dist. LEXIS 20518, at *22.  But as discussed, Plaintiff

11   has sufficiently pleaded that the oil was not flammable and that

12   the Defendants did not have a legitimate basis for believing it

13   was.  Defendants' claim that the ban saved administrative costs

14   and streamlined cell searches is insufficient.  Calipatria

15   previously allowed prayer oil, and continuing to do so would not

16   impose a significant administrative burden.  Additionally, guards

17   still conduct cell searches, and it is not apparent that

18   possessing prayer oil makes cell searches particularly burdensome.

19   See Verhagen, 220 F. Supp. 2d at 950-51 (finding that specifically

20   restricting what items an inmate may possess is not the least

21   restrictive means to controlling administrative costs); Cf. Curry

22   v. Dep't of Corr., C-09-3408 EMC(pr), 2012 U.S. Dist. LEXIS 38464,

23   at *30-31 (N.D. Cal. Mar. 21, 2012) (discussing the burden imposed

24   by allowing inmates to possess prayer oil in their cells while a

25   ban on oil was implemented).  Thus, the third Turner factor also

26   weighs in Davis's favor.

27

28

                                   47

### d.    Ready alternatives

Defendants argue that Davis's claim fails under the fourth Turner factor because they ultimately provided an alternative prayer oil vendor, although there was no alternative in the interim.  (Mot. Dismiss Attach. #1 Mem. P. & A. 7, ECF No. 30.) Plaintiff responds that Defendants waited fourteen months before they provided him with an alternative prayer oil vendor on October 16, 2010.  (Opp'n 5-6, ECF No. 31.)  In their Reply, Defendants maintain that neither the Plaintiff nor Defendants have identified any reasonable alternative to the total ban.  (Reply 4, ECF No. 33.)

Under this final factor, courts determine whether there are ready alternatives to the regulation.  Beard, 548 U.S. at 529. The Defendants could have restricted inmate access to prayer oil to an area where use could be monitored, such as the prison's chapel.  See Davis v. Flores, 2011 U.S. Dist. LEXIS 4417, at *28, 39-40 (finding that the policy banning in-cell prayer oil after Muslim imam used prayer oil bottles to smuggle contraband into the prison passed the Turner test because inmates could still use oil in the prison chapel).  If the Defendants allowed inmates to use the prayer oil during chapel time, the imam could oversee the prisoners' use and could implement procedures to minimize or eliminate the risk of fire.  See Poque v. Woodford, CIV S-05-1873 MCE(GGH), 2009 U.S. Dist. LEXIS 75943, at *46 (E.D. Cal. Aug. 25, 2009) (deciding that the ban on in-cell prayer oil use passed the Turner test because inmates could keep their oil in the chapel unless they complied with the fire marshall's requirements for in-cell use).  This factor also favors Davis.

48

Based on the above, Davis has sufficiently alleged a First Amendment violation with respect to the temporary, total ban on prayer oil.  Defendants' Motion to Dismiss Davis's First Amendment claim in count one should be **DENIED**.

> **2.    Count two: restricting religious items to quarterly packages**

In count two, Davis claims his First Amendment rights were violated on September 16, 2009, when Defendant Small approved a policy addendum indicating that certain religious items would be counted as quarterly packages.  (Second Am. Compl. 9, ECF No. 29.) The items listed in the policy, however, are items used only by Muslim inmates.  (See id.)  Plaintiff contends that the policy was amended again on October 25, 2010, stating that orders from Union Supply, an approved vendor, would not be counted as quarterly packages, but orders from unapproved vendors would.  (Id. at 10.) As a result, Defendant Small violated Davis's First Amendment rights.  (Id.)

Defendant Small argues that Plaintiff failed to plead that Small prevented him from practicing his religion, which Davis must allege before the Turner factors are applied.  (Mot. Dismiss Attach. #1 Mem. P. & A. 8, ECF No. 30.)  The September 16, 2009 policy addendum did not prevent Davis from ordering prayer oil; rather, it merely required him to order the oil as a quarterly package if he chose to order from an unapproved vendor.  (Id.) Plaintiff only complains that he is unable to order from his vendor of choice, but approving vendors in advance furthers legitimate penological interests, increasing the speed of delivery and reducing the possibility of contraband.  (Reply 6, ECF No.

33.)  Moreover, encouraging an inmate to order from an approved
Muslim vendor instead of another does not impose a substantial
burden on his ability to practice Islam.  (Id. at 6-7.)

Defendant Small also contends that even if the Turner factors
were applied, the alleged facts demonstrate a rational connection
between the policy and the legitimate interest in limiting inmate
property to reduce contraband.  (Mot. Dismiss Attach. #1 Mem. P. &
A. 8, ECF No. 30.)  Further, allowing more inmate packages creates
additional work for the guards and requires a greater allocation
of prison resources.  (Id.)  Finally, Small contends there is no
need for ready alternatives to ordering prayer oil because
plaintiff can still order it as part of a quarterly package.
(Id.)

In his Opposition, Davis argues that the policies did not
limit the amount of oil he could order or the frequency; also,
Defendants never punished him for theft, gambling, or bartering.
(Opp'n 7, ECF No. 31.)

Davis must initially allege a sincere belief that his ability
to practice his religion was burdened by the Defendant's
regulation of his purchase of prayer oil.  See Shakur, 514 F.3d at
884-85.  Davis was able to practice his religion because he was
not denied all access to prayer oil and could still order oil in
quarterly packages.  See Sareini v. Burnett, 08-13961-BC, 2011
U.S. Dist. LEXIS 34525, at *11-13 (E.D. Mich. Mar. 31, 2011)
(approving policy that restricted certain religious items because
the policy merely made it more difficult to practice plaintiff's
religion but did not impose a substantial burden).  Plaintiff has
alleged the policy makes it more difficult to decide when, and

50

1    from whom, to order prayer oil; yet, increased difficulty may be

2    insufficient to show a substantial burden.  See id.  Davis does

3    not present facts showing that the policy implemented by Small

4    prevented him from engaging in a practice fundamental to his

5    faith.

6         Warden Small's Motion to Dismiss Davis's First Amendment

7    claim for restricting religious items to quarterly packages,

8    alleged in count two, should be **GRANTED**.  See Sareini, 2011 U.S.

9    Dist. LEXIS 34525, at *12.  Because additional facts could not

10   cure the deficiencies described, Davis should not be given further

11   leave to amend.  See James, 221 F.3d at 1077.

12   **E.   RLUIPA**

13        RLUIPA provides a statutory basis for "protect[ing] prisoners

14   and other institutionalized people from government infringement on

15   their practice of religion."  Mayweathers v. Newland, 314 F.3d

16   1062, 1065 (9th Cir. 2002).  The Act states:

17              No government shall impose a substantial
             burden on the religious exercise of a person
18           residing in or confined to an institution, as
             defined in section 1997 of this title, even if
19           the burden results from a rule of general
             applicability, unless the government
20           demonstrates that imposition of the burden on
             that person --
21
                (1) is in furtherance of a compelling
22           governmental interest; and

23              (2) is the least restrictive means of
             furthering that compelling governmental
24           interest.

25   42 U.S.C.A. § 2000cc-1(a) (West 2003).

26        A plaintiff asserting a RLUIPA violation has the initial

27   burden of alleging a prima facie claim that the challenged state

28   action constitutes a "substantial burden on the exercise of his

religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005). If the plaintiff meets this burden, the state must prove that "any substantial burden . . . is both 'in furtherance of a compelling governmental interest' and the 'least restrictive means of furthering that compelling governmental interest.'" Id. (emphasis added) (quoting 42 U.S.C.A. § 2000cc-1(a); § 2000cc-2(b)); see Shakur, 514 F.3d at 888-89.

Although RLUIPA does not articulate what constitutes a "substantial burden" on religious exercise, the Ninth Circuit has defined the term according to its plain language. San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004). Specifically, state action imposes a "substantial burden" on religion when the regulation or policy "'denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Warsoldier, 418 F.3d at 995 (alteration in original) (quoting Thomas v. Review Bd. of the Ind. Emp't Sec. Div., 450 U.S. 707, 717-18 (1981)). Recently, the Ninth Circuit stated "that a 'substantial burden is imposed . . . when individuals are . . . coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." Perkel v. U.S. Dep't of Justice, 365 F. App'x 755, 756 (9th Cir. 2010) (citing Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058 (9th Cir. 2008)). The statute defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-5(7)(A); see Shakur, 514 F.3d at 888.

RLUIPA is construed broadly and in favor of the prisoner's right to exercise his religious beliefs.  42 U.S.C.A. § 2000cc-3(g); Warsoldier, 418 F.3d at 995.  Nonetheless, "[a] prison's 'accommodation of religious observances' should not be elevated 'over an institution's need to maintain order and safety.'"  Rouse v. Van Boening, No. C09-5655 RBL/KLS, 2010 U.S. Dist. LEXIS 139734, at *14 (W.D. Wash. Dec. 27, 2010) (quoting Cutter v. Wilkinson, 544 U.S. 709, 722 (2005)).  Prison security constitutes a compelling state interest, and courts must give deference to prison officials' expertise in this area.  Cutter, 544 U.S. at 725 n.13.  Courts should not, however, automatically rubber stamp a prison official's judgment.  Lovelace v. Lee, 472 F.3d 174, 190 (4th Cir. 2006).

"[P]rison officials bear the burden of establishing that the restriction challenged is the 'least restrictive alternative to achieve' a compelling governmental interest."  Alvarez v. Hill, 518 F.3d 1152, 1156 (9th Cir. 2008) (quoting Warsoldier, 418 F.3d at 998).  "If prison officials meet th[is] standard, the prison regulation passes muster under RLUIPA, regardless of the burden it imposes on religious exercise."  Greene v. Solano Cnty. Jail, 513 F.3d 982, 990 (9th Cir. 2008).  Officials cannot justify restrictions by merely claiming the regulation is necessary to maintain order and security.  Id. at 989-90.  The Ninth Circuit has also held, "[A]n outright ban on a particular religious exercise is a substantial burden on that exercise."  Id. at 988.

1        **1.   Count one: temporary ban on prayer oil**

2             **a.   Substantial burden**

3        To state a claim under RLUIPA, Plaintiff must sufficiently

4   allege the regulation substantially burdened his religious

5   practice.  <u>Warsoldier</u>, 418 F.3d at 994.  The Defendants do not

6   appear to challenge the allegation that a temporary prayer oil ban

7   imposed a substantial burden on Davis's religious practice.  (<u>See</u>

8   Mot. Dismiss Attach. #1 Mem. P. & A. 10-11, ECF No. 30.)  A prison

9   policy imposes a substantial burden when it "intentionally puts

10  significant pressure on inmates . . . to abandon their religious

11  beliefs."  <u>Id.</u> at 996.  For a burden to be substantial, the Ninth

12  Circuit has required it to be "oppressive" to a "significantly

13  great extent," so as to make the religious practice "effectively

14  impracticable."  <u>San Jose Christian Coll.</u>, 360 F.3d at 1034-35.

15  The religious practice must be important to the religion, and the

16  challenged restriction must impose a substantial burden on the

17  ability to practice the plaintiff's religion.  <u>See</u> <u>Riggins v.</u>

18  <u>Clarke</u>, 403 F. App'x 292, 295 (9th Cir. 2010).  Here, a complete

19  ban on prayer oil - a practice mandated by the Islamic religion -

20  placed a substantial burden on Davis's exercise of his religion.

21  <u>See</u> <u>Charles</u>, 220 F. Supp. 2d at 948 (finding that a prison's total

22  ban on prayer oil might substantially burden religious exercise).

23  The ban forced Davis to abandon a practice mandated by his

24  religion.  <u>See</u> <u>Greene</u>, 513 F.3d at 988 (stating that a complete

25  ban on a religious practice is a substantial burden).

26             **b.   Compelling interest**

27        After Davis has shown a substantial burden, the onus shifts

28  to the Defendants to show the temporary ban on prayer oil was in

54

1 furtherance of a compelling governmental interest.  <u>See</u>

2 <u>Warsoldier</u>, 418 F.3d at 995.

3      Defendants argue that they temporarily halted shipments of

4 prayer oil to determine whether the oil was flammable and to

5 locate an alternative prayer oil vendor.  (Mot. Dismiss Attach. #1

6 Mem. P. & A. 10-11, ECF No. 30.)  They assert that courts have

7 upheld temporary bans on prayer oil and restrictions on the amount

8 of prayer oil an inmate may possess.  (<u>Id.</u>)  The ban furthers a

9 compelling government interest and is the least restrictive means

10 of furthering the interest; once the prayer oil was found not to

11 be flammable, Defendants located an alternate vendor and lifted

12 the ban.  (<u>Id.</u> at 11.)  In his Opposition, Davis contends

13 Defendants knew the prayer oil was not flammable and notes that

14 they still have not provided an MSDS showing the oil was

15 flammable.  (Opp'n 1, ECF No. 31.)

16      Prison safety and security are compelling governmental

17 interests.  <u>Cutter</u>, 544 U.S. at 725 n.13; <u>Johnson v. California</u>,

18 543 U.S. at 514; <u>see also</u> <u>Ward</u>, 1 F.3d at 879 (upholding a ban on

19 prayer candles in inmate cells due to fire concerns under <u>Turner</u>).

20 A ban on potentially flammable materials furthers the compelling

21 state interest of maintaining safety and security within prisons

22 because cell fires threaten inmates and staff.  <u>See</u> <u>Klem</u>, 497 F.3d

23 at 283-84.  Nevertheless, the total ban on prayer oil must have

24 been in furtherance of the compelling interest of prison safety.

25 <u>See</u> <u>Warsoldier</u>, 418 F.3d at 994.  It is unclear whether the

26 Defendants had any legitimate basis for believing the oil was

27 flammable, and even a temporary ban on nonflammable prayer oil

28 does not further the compelling interest in prison safety.  <u>See</u>

55

1   Washington v. Klem, 497 F.3d 272, 284 (9th Cir. 2007) (finding

2   that a policy limiting the number of books inmates may possess in

3   their cells does not further the compelling interest of prison

4   safety because a decrease in books does not reduce the risk of in-

5   cell fires).  At a minimum, Davis sufficiently pleaded that

6   Defendants had no legitimate basis for believing that the oil was

7   flammable and banning the oil; therefore, the ban was not in

8   furtherance of a compelling interest.

9           **c.   Least restrictive means**

10      Even if banning all oil furthered a compelling interest, the

11  policy must also have been the least restrictive means of

12  achieving the governmental interest.  See Warsoldier, 418 F.3d at

13  999.  Defendants must have "actually considered" alternatives and

14  rejected them before instituting the prayer oil ban.  See id.

15  Here, Defendants do not allege that they considered alternatives

16  or explain why alternatives were not feasible or an equally

17  efficient means of maintaining prison safety or any other

18  governmental interest.  (See Mot. Dismiss Attach. #1 Mem. P. & A.

19  7-9, ECF No. 30; Reply 6-7, ECF No. 33.)  Defendants make a

20  blanket assertion that the total ban was the least restrictive

21  means of achieving safety, but this alone is insufficient.

22  Greene, 513 F.3d at 990.

23      Defendants could have restricted where inmates had access to

24  prayer oil or instituted requirements that must be met before

25  inmates may possess prayer oil in their cell.  See Poque, 2009

26  U.S. Dist. LEXIS 75943, at *46 (approving policy banning prayer

27  oil because inmates could still have oil in their cell if they

28  complied with fire marshal's requirements, and they could access

prayer oil at chapel); <u>Glass</u>, 2008 U.S. Dist. LEXIS 20518, at *20-
23 (finding that the in-cell prayer oil restriction was not
unconstitutional because inmates could still use the oil at
chapel).   The Defendants have not stated that it would be
impracticable to allow inmates to use prayer oil during chapel and
under the supervision of the Muslim imam.   <u>See</u> <u>Davis v. Flores</u>,
2011 U.S. Dist. LEXIS 4417, at *46-47.   Davis has alleged facts
indicating that Defendants made no attempt to consider less
extreme measures of furthering prison safety before instituting
the total ban on prayer oil.   "There is no basis in this case for
a court . . . to declare the least restrictive means test
satisfied without any substantive explanation from prison
officials."   <u>See</u> <u>Lovelace</u>, 472 F.3d at 192 (footnote omitted).
The Defendants Motion to Dismiss Davis's RLUIPA claim against them
in count one should be **DENIED**.

    **2.    Count two: restricting religious items to quarterly**
          **packages**

    Davis additionally asserts that Warden Small's addendum
requiring that certain religious orders and orders from
nonapproved vendors be counted as quarterly packages, but orders
from Union Supply would not be counted as quarterly packages,
violates RLUIPA.   (Second Am. Compl. 9-10, ECF No. 29.)

    Davis must assert that the policy substantially burdened his
religious practices.   <u>See</u> <u>Warsoldier</u>, 418 F.3d at 994.   Plaintiff
has not pleaded facts establishing a substantial burden because he
still had access to prayer oil by ordering it as part of a
quarterly package.   <u>See</u> <u>Thomas v. Little</u>, 2009 U.S. Dist. LEXIS
57568, at *15 n.5 (finding no substantial burden because inmates

could still order prayer oil, even if restricted to one vendor).
As discussed above, Davis has only alleged that the policies make
it more difficult for him to order prayer oil from his preferred
vendor; this is not the equivalent of a substantial burden.  See
Sareini v. Burnett, 2011 U.S. Dist. LEXIS 34525, at *12.  An
inmate does not suffer a substantial burden just because the
prison fails to "fully provide all the benefits than an inmate
desires for religious accommodation . . . ."  Hartman v. Cal.
Dep't of Corr. & Rehab., No. 1:10-cv-00045-LJO-SMS, 2010 U.S.
Dist. LEXIS 41522, at *45 (E.D. Cal. Apr. 28, 2010) (citing
Sefeldeen v. Alameida, 238 F. App'x 204, 206 (9th Cir. 2007)).
For example, "[p]risoners do not have a constitutional right to
the religious advisor of their choice."  Id. at *46 (citing Blair-
Bey v. Nix, 963 F.2d 162, 163-64 (8th Cir. 1992).  Similarly,
Davis does not have a constitutional right to a vendor of his
choice.  A "satisfactory accommodation" is the touchstone.  Id. at
*45.

        For these reasons, Defendant Small's Motion to Dismiss
Plaintiff's RLUIPA claims against him in count two should be
**GRANTED** without leave to amend.

**F.    Qualified Immunity**

        All of the Defendants argue they are entitled to qualified
immunity from liability on the First and Fourteenth Amendment
claims because they did not violate clearly established
constitutional law, and they reasonably believed their conduct was
lawful.  (Mot. Dismiss Attach. #1 Mem. P. & A. 15-16, ECF No. 30;
Reply 7, ECF No. 33.)  They also assert that courts have approved
temporary bans on prayer oil when faced with security concerns and

that prison officials are not required to provide prisoners with a special order for religious items. (Id. at 16.) Defendant Ours posits that Plaintiff has not cited any case law holding that prison officials cannot institute a temporary ban on prayer oil to determine flammability. (Reply 7, ECF No. 33.) Defendants Small, Borem, and Powell contend that they relied on the hazardous materials specialist's determination that prayer oil was flammable, so their conduct was reasonable. (Id.) Finally, Small asserts there is no federal law holding that inmates are entitled to order religious supplies in a manner different from ordinary supplies. (Id.) Thus, Small alleges, he is also entitled to qualified immunity from liability on the First and Fourteenth Amendment claims against him in count two. (Id.)

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. Al-Kidd, 563 U.S. __, __, 131 S. Ct. 2074, 2080 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Hydrick v. Hunter, 449 F.3d 978, 992 (9th Cir. 2006). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

When considering a claim for qualified immunity, courts engage in a two-part inquiry: Do the facts show that the defendant violated a constitutional right, and was the right clearly established at the time of the defendant's purported misconduct? Delia v. City of Rialto, 621 F.3d 1069, 1074 (9th

Cir. 2010) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 232
(2009)).  A right is clearly established if the contours of the
right are so clear that a reasonable official would understand his
conduct was unlawful in the situation he confronted.  <u>Dunn v.
Castro</u>, 621 F.3d 1196, 1199-1200 (9th Cir. 2010) (citation
omitted) (internal quotation marks omitted).  This standard
ensures that government officials are on notice of the illegality
of their conduct before they are subjected to suit.  <u>Hope v.
Pelzer</u>, 536 U.S. 730, 739 (2002) (citation omitted).  "This is not
to say that an official action is protected by qualified immunity
unless the very action in question has previously been held
unlawful . . . ."  <u>Id.</u>

     The Supreme Court recently found that the sequence of this
two-step inquiry is no longer "an inflexible requirement."
<u>Pearson</u>, 555 U.S. at 236.  Thus, it is within the court's
discretion to decide which step to address first.  <u>Id.</u>; see <u>Delia</u>,
621 F.3d at 1075; <u>Bull v. City & County of San Francisco</u>, 595 F.3d
964, 971 (9th Cir. 2010)).  If the Defendants' conduct does not
amount to a constitutional violation, or the violation was not
clearly established, or the Defendants' actions reflect a
reasonable mistake as to what the law requires, they are entitled
to qualified immunity.  <u>Blankenhorn v. City of Orange</u>, 485 F.3d
463, 471 (9th Cir. 2007)); see <u>James v. Rowlands</u>, 606 F.3d 646,
651 (9th Cir. 2010) (quoting <u>Pearson</u>, 555 U.S. at 232, 235).

     **1.   First Amendment**

     As previously discussed, the First Amendment claims against
all the Defendants in count two should be dismissed.  The
qualified immunity inquiry may end here.  <u>Pearson</u>, 555 U.S. at 236

1  ("In some cases, a discussion of why the relevant facts do not

2  violate clearly established law may make it apparent that in fact

3  the relevant facts do not make out a constitutional violation at

4  all."); <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) ("If no

5  constitutional right would have been violated were the allegations

6  established, there is no necessity for further inquiries

7  concerning qualified immunity."); <u>Dunn v. Castro</u>, 621 F.3d at 1199

8  (stating that courts can grant qualified immunity on the basis of

9  the clearly established prong alone) (citing <u>Rowland</u>, 606 F.3d at

10  651).  Thus, the Defendants' Motion to Dismiss Plaintiff's claim

11  for civil damages against them in count two should be **GRANTED**

12  because they are entitled to qualified immunity.

13      As to Davis's First Amendment claims in count one, however,

14  dismissal is not appropriate.  Therefore, the Court will consider

15  whether Defendants are entitled to qualified immunity.

16          **a.   Violation of a constitutional right**

17      In count one, Davis argues that Defendants Powell, Borem,

18  Ours, and Small violated his First Amendment right to practice his

19  religion by enforcing a temporary ban on Islamic prayer oil.  (<u>See</u>

20  Second Am. Compl. 3-8, ECF No. 29).  As outlined above, Davis has

21  sufficiently pleaded that the Defendants' conduct violated his

22  First Amendment right to freely exercise his religion.

23          **b.   Whether the right was clearly established**

24      "Whether a right is clearly establishes turns on the

25  'objective legal reasonableness of the action, addressed in light

26  of the legal rules that were clearly established at the time it

27  was taken.'"  <u>Clouthier v. County of Contra Costa</u>, 591 F.3d 1232,

28  1241 (9th Cir. 2010) (quoting <u>Pearson</u>, 555 U.S. at 242-43).  "This

is 'a two-part inquiry:  (1) Was the law governing the state
official's conduct clearly established?  (2) Under that law could
a reasonable state official have believed his conduct was
lawful?'"  <u>Estate of Ford</u>, 301 F.3d at 1050 (quoting <u>Jeffers</u>, 267
F.3d at 910); <u>Browning v. Vernon</u>, 44 F.3d 818, 822 (9th Cir.
1995).

First, the law governing the Defendants' conduct was clearly
established.  "Whether the right is clearly established in a
particular case is judged as of the date of the incident alleged,
and is a pure question of law." <u>Phillips v. Hust</u>, 338 F. Supp. 2d
1148, 1162 (D. Or. 2003) (citing <u>Act Up!/Portland v. Bagley</u>, 988
F.2d 868, 873 (9th Cir. 1993)).  "[T]he right alleged to have been
violated must not be so broadly defined as to 'convert the rule of
qualified immunity that our cases plainly establish into a rule of
virtually unqualified liability simply by alleging violation of
extremely abstract rights.'"  <u>Cunningham</u>, 229 F.3d at 1288
(quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987)).  "On
the other hand, . . . the right can not be so narrowly construed
so as to 'define away all potential claims.'"  <u>Id.</u> (quoting <u>Kelley
v. Borg</u>, 60 F.3d 664, 667 (9th Cir. 1995)).

Here, Davis's right to practice his religion, including
manners of worship mandated by his faith, was clearly established.
<u>See</u> <u>McElyea</u>, 833 F.2d at 197 (citing <u>O'Lone</u>, 482 U.S. 342; <u>Bell v.
Wolfish</u>, 441 U.S. at 545).  In 1997, the Ninth Circuit made clear
that prison officials can only restrict inmate's religious
practices required by their faith if their justification is
reasonably related to legitimate penological interests.  <u>Id.</u>  The
Supreme Court articulated that the four-prong <u>Turner</u> analysis is

1  used to balance inmate's rights and determine what is reasonably

2  related.  See O'Lone, 482 U.S. at 350-53.

3     Second, a reasonable prison official in the Defendants'

4  positions would believe that his or her conduct was unlawful.  See

5  Padilla v. Yoo, 678 F.3d 748, 761-62 (9th Cir. 2012).  "The

6  relevant, dispositive inquiry . . . is whether it would be clear

7  to a reasonable officer that his conduct was unlawful in the

8  situation he confronted."  Saucier, 533 U.S. at 202.  If the law

9  did not put the officer on notice that his conduct would be

10  clearly unlawful, qualified immunity is appropriate.  Id.

11     Qualified immunity must be viewed in the context of Davis's

12  claims against each Defendant.  See Nampa Classical Acad. v.

13  Goesling, 714 F. Supp. 2d 1079, 1090 n.14 (D. Idaho 2010).

14  "Reasonable extrapolations of prior law to circumstances where it

15  would have been apparent to reasonable officers will suffice to

16  determine reasonableness in particular circumstances."  Barnes v.

17  Denney, No. CIV S-07-1380 GGH P, 2010 U.S. Dist. LEXIS 25251, at

18  *61 (E.D. Cal. Mar. 17, 2010) (citing Burke v. County of Alameda,

19  586 F.3d 725, 734 (9th Cir. 2009)).  Dismissal, however, is

20  inappropriate unless the Court can determine that qualified

21  immunity applies, based on the complaint itself.  Clinton v.

22  Green, No. CV 08-4180-DOC(OP), 2012 U.S. Dist. LEXIS 10374, at *20

23  (C.D. Cal. Jan. 19, 2012) (citing Groten v. California, 251 F.3d

24  844, 851 (9th Cir. 2001)), adopted by Clinton v. Green, No. CV 08-

25  4180-DOC(OP), 2012 U.S. Dist. LEXIS 10353 (C.D. Cal. Jan. 25,

26  2012).

27     At the motion to dismiss stage, a plaintiff "does not need to

28  show with great specificity how each defendant contributed to the

63

violation of his constitutional rights.  Rather, he must state the allegations generally so as to provide notice to the defendants and alert the court as to what conduct violated clearly established law."  <u>Real v. Walker</u>, No. 2:09-cv-3273 GEB KJN P, 2012 U.S. Dist. LEXIS 28045, at *52 (E.D. Cal. Mar. 2, 2012) (quoting <u>Preschooler II v. Clark County Sch. Bd. of Trs.</u>, 479 F.3d 1175, 1182 (9th Cir. 2007)), <u>adopted by</u> <u>Real v. Walker</u>, No. 2:09-cv-3273 GEB KJN P, 2012 U.S. Dist. LEXIS 45650 (E.D. Cal. Mar. 30, 2012).

Here, Warden Small joined in the decision to ban prayer oil from Calipatria because he concurred with Defendant Ours that religious prayer oil was flammable.  (<u>See</u> Second Am. Compl. Attach. #2 Ex. H, ECF No. 29.)  Defendant Ours, the associate hazardous material specialist, Warden Small, and the prison fire chief agreed that religious prayer oil posed a "fire, health and safety hazard."  (<u>Id.</u>)  Community Partnership Manager Powell notified "R & R Sergeant" Borem on February 1, 2010, that the decision to ban oil was made.  (<u>Id.</u>)  The February 3, 2012 letter notifying Davis of the policy banning all prayer oil was signed by Defendant Borem.  (<u>Id.</u>)  All of the Defendants participated in the decision to ban the oil, which was "based on the fire rating information obtained from the Material Safety Data Sheet (MSDS)." (<u>Id.</u>)  Defendants also noted, "The institution [is] in the process of approving a vendor to sell non-flammable religious oils via the institutional canteen."  (<u>Id.</u>)

A reasonable prison official in each Defendant's position would have known that imposing a total ban of payer oil would violate an inmate's right to exercise his religion unless the ban

64

1   was rationally related to a legitimate interest.  See Beard, 548

2   U.S. at 529 (discussing the Turner factors).  A reasonable

3   official would also know that banning prayer oil entirely would

4   not be rationally related to prison safety unless the oil was

5   reasonably believed to pose a fire hazard or be flammable.  See

6   Glass, 2008 U.S. Dist. LEXIS 20518, at *17-18 (holding that a ban

7   on prayer oil was rationally related to prison safety after

8   inmates left burning prayer oil unattended).  As discussed

9   previously, Davis has sufficiently pleaded that the defendants had

10  no legitimate basis for believing that the prayer oil was

11  flammable.  Further, the Defendants would have received the 2003

12  memorandum explaining which flash points were acceptable.  (See

13  Second Am. Compl. Attach. #2 Ex. I, ECF No. 29.)

14      Defendants argue that case law allowed temporary bans when

15  faced with security or safety concerns.  (Mot. Dismiss Attach. #1

16  Mem. P. & A. 16, ECF No. 30 (citing Davis v. Flores, 2011 U.S.

17  Dist. LEXIS 4417, at *40).)  This argument, however, suffers from

18  two deficiencies.  First, Davis was decided in 2011, after the

19  Defendants implemented the prayer oil ban in 2010.  The relevant

20  inquiry is whether the law was clearly established at the time the

21  prayer oil ban was implemented, not one year later.  See Ashcroft,

22  563 U.S. at __, 131 S. Ct. at 2080.  Second, Davis v. Flores did

23  not address a total prayer oil ban.  Rather, the court upheld a

24  ban on prayer oil in inmate cells because the Muslim imam had been

25  smuggling contraband into the prison using prayer oil bottles.

26  See Davis, 2011 U.S. Dist. LEXIS 4417, at *40.  Also, the inmates

27  still had access to prayer oil in the chapel.  Id.  The Defendants

28  therefore have not identified case law allowing prison officials

to implement a total ban on nonflammable prayer oil without
providing any alternatives.

At this stage in the pleadings, Defendants Small, Ours,
Powell, and Borem should not be granted qualified immunity, and
their Motion to Dismiss the First Amendment claims in count one on
this basis should be **DENIED**.

**2.   Equal Protection**

The Defendants also argue that they are entitled to qualified
immunity with respect to the equal protection allegations.  (Mot.
Dismiss Attach. #1 Mem. P. & A. 15-16, ECF No. 30; Reply 7, ECF
No. 33.)  As discussed previously, Plaintiff fails to state a
equal protection claims against Powell, Borem, and Ours in count
two, and these claims should be dismissed.  The qualified immunity
inquiry may therefore end here.  <u>Pearson</u>, 555 U.S. at 236; <u>Saucier
v. Katz</u>, 533 U.S. at 201; <u>Dunn v. Castro</u>, 621 F.3d at 1199.  The
Defendants' Motion to Dismiss based on their qualified immunity
from liability for civil damages should be **GRANTED**.  Similarly,
the equal protection claim against Defendant Small in count two
concerning the October 2010 addendum fails to state a claim.
Therefore, Small's Motion to Dismiss on this ground as to the
October addendum should also be **GRANTED**.

As to the equal protection claim against Warden Small in
count two for the September 2009 policy, however, Davis has
pleaded a violation.  Therefore, the Court will analyze wether
Small may avail himself of qualified immunity from liability based
on the September policy.

10cv01891 CAB(RBB)

### a.   Violation of a constitutional right

Defendant Small purportedly discriminated against Davis and other Muslim inmates when he implemented the discriminatory September 16, 2009 policy addendum that only penalizes inmates who order Muslim religious articles.  (See Second Am. Compl. 9-10, ECF No. 29.)  Inmates retain their right to be free from invidious discrimination based on their religion.  Cruz v. Beto, 405 U.S. at 321-22.  The policy's limitation on Muslim special orders did not apply to non-Muslim religious items; this disparate impact on a protected class can show that Small acted with discriminatory intent "if some invidious or discriminatory purpose underlies the policy."  See Lee v. City of Los Angeles, 250 F.3d at 686.  Additionally, the personal property package policy is not a narrowly tailored measure that furthers a compelling governmental interest sufficient to satisfy the strict scrutiny standard.  See Johnson v. California, 543 U.S. at 505.  Plaintiff has adequately alleged that Defendant Small violated his Fourteenth Amendment rights.

### b.   Whether the right was clearly established

The law governing the Defendants Small's conduct -- Davis's right to be free from invidious discrimination on the basis of his religion -- was clearly established.  Cruz v. Beto, 405 U.S. at 321-22.  Prison officials cannot discriminate on the basis of religion and must provide inmates with a reasonable opportunity to pursue their faith.  Id. at 322.

A reasonable prison official in Warden Small's position would know that the claimed conduct was unlawful.  The policy addendum allegedly lists only Muslim religious articles as items that must

67

be counted as quarterly packages; only Muslim inmates would therefore be unable to place special orders for both religious and other personal items, while other inmates could order both.  A reasonable official would know that treating inmates of one faith differently from inmates of another faith was unconstitutional. See Ass'n of Christian Schs. Int'l, 362 F. App'x at 646; see also Bess v. Alameida, No. CIV S-03-2498 GEB DAD P, 2007 U.S. Dist. LEXIS 63871, at *73-74 (E.D. Cal. Aug. 29, 2007) (denying qualified immunity on equal protection grounds because it was clearly established that inmates have a right not to be intentionally treated differently because of their religion).  The allegation that the listed items are only used by Muslim inmates suggests that Small acted with discriminatory intent when he created a policy that purportedly had a disparate impact on Muslim inmates.  See Navarro, 72 F.3d at 716 n.5 (stating that discriminatory intent can be shown if an official acts "because of" the adverse effects upon an identifiable group).

     Further, Davis maintains that the discriminatory policy does not further a compelling interest.  There is no evidentiary basis for determining whether a legitimate penological interest is the basis for the policy.  Defendant Small would have known that implementing a policy that affects only Muslim inmates would be unconstitutional if it was issued solely for administrative convenience.  See Frontiero, 411 U.S. at 690 ("[A]ny statutory scheme which draws a sharp line between the sexes, solely for the purpose of achieving administrative convenience . . . involves the 'very kind of arbitrary legislative choice forbidden by the [Constitution] . . . .'") (emphasis added) (citing Reed v. Reed,

1  404 U.S. 71, 76-77 (1971)).  Regardless, Defendant did not impose

2  similar restrictions on religious items purchased by practitioners

3  of other faiths.  The total ban on prayer oil shortly after

4  implementing the personal property package policy also indicates

5  animus towards Muslim inmates at Calipatria.  See Watison, 668

6  F.3d at 1114.  Defendant Small is not entitled to qualified

7  immunity at this stage in the proceedings.  See Groten, 251 F.3d

8  at 851.  His Motion to Dismiss the equal protection claim

9  regarding the September 2009 addendum on qualified immunity

10 grounds should be **DENIED**.

11                    **IV.   CONCLUSION**

12      Davis's references to violations of the California Code of

13 Regulations are not separate causes of action.  Defendants' Motion

14 to Dismiss this portion of count two should be **GRANTED** without

15 leave to amend.

16      The Plaintiff improperly includes several new causes of

17 action in count two of his Second Amended Complaint.  First, an

18 amendment to include a retaliation claim in count two against

19 Defendant Small for the addendum he approved on September 16,

20 2009, would not clearly be futile.  The district court should

21 treat this retaliation claim as properly asserted.  Small's Motion

22 to Dismiss this claim should be **DENIED**.  A retaliation claim

23 against Small for the October 25, 2010 policy, however, would be

24 futile; this claim should not be considered.  Small's Motion to

25 Dismiss this claim should be **GRANTED** without leave to amend.

26 Retaliation claims against Defendants Powell, Borem, and Ours for

27 the September 2009 and October 2010 policies would also be futile.

28 Their Motion to Dismiss both retaliation claims against them

should be **GRANTED** without leave to amend.  Second, Defendants
Powell, Borem, and Ours's Motion to Dismiss the conspiracy causes
of action against them in count two should be **GRANTED** without
leave to amend; an amendment to include a conspiracy claim against
Defendant Small would be futile, and the conspiracy claim against
him should be **DISMISSED** without leave to amend.  Third, Small's
Motion to Dismiss the equal protection claim in count two
regarding the September 16, 2009 policy addendum should be **DENIED**.
An amendment to include an equal protection claim against Powell,
Borem, and Ours for this policy would be futile and should be
**DISMISSED** without leave to amend.  Likewise, an amendment to
include an equal protection cause of action against all Defendants
based on the October 25, 2010 policy would be futile and should be
**DISMISSED** without leave to amend.

The Motion to Dismiss the First Amendment and RLUIPA causes
of action against all Defendants in count one should be **DENIED**; in
count two, the Defendants' Motion to Dismiss the First Amendment
and RLUIPA claims should be **GRANTED** without leave to amend.

All of the Defendants are entitled to qualified immunity for
the First Amendment claims against them in count two, and their
Motion to Dismiss Davis's claim for civil damages on this basis
should be **GRANTED**.  The Defendants are not, however, entitled to
qualified immunity as to the First Amendment allegations in count
one, and their Motion to Dismiss on this basis should be **DENIED**.

Defendants Ours, Powell, and Borem's Motion to Dismiss
Plaintiff's claim for civil damages for the equal protection
violation alleged in count two on qualified immunity grounds
should be **GRANTED**.  Defendant Small is not immune from damages

1  attributable to the equal protection claim against him in count

2  two for the September 2009 policy.  His Motion to Dismiss on this

3  ground should be **DENIED**.  Small is, however, entitled to qualified

4  immunity for the equal protection claim against him in count two,

5  focusing on the October 2010 addendum, and his Motion to Dismiss

6  Plaintiff's claim for civil damages for this claim should be

7  **GRANTED**.

8       This Report and Recommendation will be submitted to United

9  States District Court Judge Cathy Ann Bencivengo, pursuant to the

10  provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

11  objections with the Court and serve a copy on all parties or

12  before August 24, 2012.  The document should be captioned

13  "Objections to Report and recommendation."  Any reply to the

14  objections shall be served and filed on or before September 7,

15  2012. The parties are advised that failure to file objections

16  within the specified time may waive the right to appeal the

17  district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157

18  (9th Cir. 1991).

19

20  Dated:  July 25, 2012

21                                RUBEN B. BROOKS
                                United States Magistrate Judge
22

23  cc: Judge Bencivengo
        All Parties of Record
24

25

26

27

28